BATTY v. NIAGARA FALLS HYDRAULIC POWER & MFG. CO.

(Supreme Court, Appellate Division, Fourth Department. January 13, 1903.)

1. MASTER AND SERVANT—DEATH OF SERVANT—ASSUMPTION OF RISK.
Defendant was engaged in constructing a water power, and for some time had been engaged in clearing from the bank all loose material liable to injure its employés working at the bottom of the gorge, but a particular rock and certain loose earth surrounding it had not been removed, and plaintiff's decedent, who had been in defendant's employ for a year, was directed to run a plank across such ground to prevent the ground and rock from falling, and as he was about to do this the rock fell and struck him, causing injuries from which he died. Held, that deceased assumed the risk.

Appeal from trial term, Niagara county.

Action by Jennie A. Batty, as administratrix, against the Niagara Falls Hydraulic Power & Manufacturing Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

See (Sup.) 55 N. Y. Supp. 1088.

The defendant is the owner of a surface canal, the water of which is used for the development of power at the city of Niagara Falls, the water being taken from the river at a point above the falls, and conducted to the brink of a bank below the falls, which is about 200 feet above the level of the river. In the spring of 1896 the defendant was engaged in the construction of a power plant at the foot of this bank, and to that end was intending to conduct the water from the top of the bank to a point underneath its power house by means of a penstock, for which an excavation had been made in the rock which covered the surface of the embankment. For about one-half its distance from the bottom this embankment formed a slope at an angle of about 45 degrees, and for the remaining distance of 100 feet it was almost or quite perpendicular. The slope at the lower end was covered with a layer of débris of rock and earth which had fallen from above. Underneath this débris was soft or shale rock, and still below this was a bed of limestone. The plaintiff's intestate was a carpenter by trade, and had been in the defendant's employ for the period of about one year, doing whatever work was required of him. In the fall preceding the accident, to which reference will be hereafter made, he, with others, was engaged for several weeks in clearing the surface of the embankment of loose dirt and rocks which had lodged there by means of a hose, which threw so powerful a stream of water that it drove all loose débris into the river, but it failed to remove some of the rocks which had become imbedded in the surface of the bank. As a consequence, when a thaw occurred in the spring, many of these rocks and the loose earth surrounding them would fall to the bottom of the slope, and endanger the persons and lives of the men at work there. In the spring of 1896 the penstock had not been constructed, but the work of excavation therefor had been completed, and the defendant was preparing to build the rear wall of its power house upon one of the ledges of rock near the water level, and, in order that this work might proceed with as little danger as possible to the workmen engaged thereon, the plaintiff's intestate, with others, was engaged in clearing off or supporting any loose earth or rocks in the upper embankment which threatened danger. On the 13th day of April, 1896, the sun came out bright and warm, and the plaintiff's intestate, with a fellow workman, had gone

up the slope on the north side of the penstock cut in a scale box which was raised and lowered by means of a derrick, and had spent the forenoon in clearing the upper bank of earth and stones which had been loosened by the warmth of the sun and were likely to fall, and was intending to continue that occupation in the afternoon on the south bank of the cut. Upon this portion of the embankment there was a rock and some "bad ground," as it was called, which seemed to threaten danger, and an effort had been made to remove the same, but this was found to be impossible of accomplishment by reason of the frost remaining in the ground. On the day above mentioned, Batty, the plaintiff's intestate, had been directed by the defendant's foreman to run a plank across this bad ground, so as to prevent its falling upon the men at work below, and was about going up in the scale box for this very purpose, when, as he stepped out to get a bar, the earth and rock fell, striking him upon the head, and injuring him so severely as to cause his death.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

C. S. Crosser, for appellant.

Alfred W. Gray, for respondent.

ADAMS, P. J. This is not a case which calls for the application of the rule that a master is bound to use all reasonable efforts to make the place in which he places his servants at work reasonably safe. The "place," it is true, was a somewhat dangerous one, made so, however, by the operation of nature and by the progress of the work in which the defendant was engaged; but this danger, such as it was, was perfectly obvious to Batty and his fellow workmen. Unavailing efforts, it seems, had already been made to remove this rock or bad earth, and it was while starting up the bank by direction of his foreman for the express purpose of placing some planking in position to catch and hold the same, and thereby to protect himself and his co-employés from the danger which threatened them, that Batty was killed. We think it very clear, in view of this established fact, that in the circumstances of this case the risk was either one which was assumed by Batty, or else one which related to the detail of the work in which he was engaged, and that in either event no liability attaches to the defendant for his death. The court of appeals has recently in several instances laid down the rule which is applicable to cases of this character. In Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021,—which was a case where the place in which the plaintiff had been directed to work had become unsafe by reason of some overhanging rock, caused by a blast, and no effort had been made to remove the same,—it was held that whatever negligence there was in the omission to clean off the bench, and protect the plaintiff from the danger which threatened him from above, was the negligence of the defendant's foreman, for which the master was not liable, as it was a mere detail of the work in which both the plaintiff and the foreman were engaged. The doctrine of this case was followed in Capasso v. Woolfolk, 163 N. Y. 472, 57 N. E. 760, where an unsuccessful attempt had been made by the defendant's foreman to remove a loose stone which had been left in a rock cutting as the result of a blast, and subsequently fell upon and injured the plaintiff, who had been directed by his employer to work under the same; it was held that, if such accident was occasioned

by anybody's negligence, it was that of the foreman, who was a fellow servant of the plaintiff; and that, consequently, the risk was one which the plaintiff assumed when he entered upon his employment. In a still later case (Di Vito v. Crage, 165 N. Y. 378, 59 N. E. 141), which in many respects is quite analogous to the one under review, it was held that, in an action to recover damages for personal injuries, where it appeared that plaintiff had been in the defendants' employment for several months, and had been directed by their foreman to remove loose pieces of rock that should be found along a bank so as to render a continuance of blasting safe, and, while engaged in so doing, a large stone, which had been thrown on top of the bank by a previous blast in the prosecution of the general work, and had rested there until the accident, and which the defendants had directed the foreman to remove, fell, and, striking the plaintiff, caused the injuries complained of, a recovery could not be sustained, since they were the result of a risk, and which plaintiff assumed as an incident to the employment in which he was engaged, and, if the result of any negligence, it was that of the foreman, a fellow workman, for which the defendants would not be responsible. Referring to the Perry and Capasso Cases, above cited, as authority for the statement, Martin, J., in his opinion, declares that:

"If the plaintiff's injury had resulted from the falling of a loosened rock upon the side of the cliff, this case would clearly fall within the principle established by [those] cases, and the judgment could not be sustained." Page 383, 165 N. Y., and page 143, 59 N. E.

We think there is even less ground for a recovery by the plaintiff in this action than in either of those above cited, inasmuch as her intestate lost his life while in the attempt to make a place safe for his fellow workmen.

It would be an anomalous condition of affairs which would impose upon the master, as a consequence of his efforts to safeguard his employés, liability for an injury resulting to one of them from the very danger which he was seeking to avoid, and which was perfectly apparent to the person attempting to remedy the same. Such a rule would require that the master must either personally take such steps as are necessary to protect his employés from dangers which confront them, or else run the hazard of being mulcted in damages for any accident which may result therefrom. The judgment appealed from should be affirmed.

Judgment affirmed, with costs. All concur.