JENNIE A. BATTY, as Administratrix, etc., of WILLIAM H. BATTY,
Deceased, Appellant, *v.* NIAGARA FALLS HYDRAULIC POWER AND
MANUFACTURING COMPANY, Respondent.

*Negligence — death of an employee caused by the falling of a rock, which he was
attempting to remove so that work might be safely done below it — assumption
of risk — detail of the work.*

In an action brought to recover damages resulting from the death of the plain-
tiff's intestate, it appeared that the intestate was a carpenter employed by the
defendant, which was an hydraulic power company; that in the spring of the
year of 1896 the defendant, being desirous of building a power house at the
foot of an embankment, which was incumbered by loose earth and rocks,
which were likely to fall and imperil the safety of the men engaged in build-
ing the power house, sent the intestate with others to remove or support such
loose earth and rocks; that in the course of the work it was found impossible,
by reason of the frost remaining in the ground, to remove some earth and rock
which threatened to fall, and that the defendant's foreman directed the plain-
tiff's intestate to support the rock and earth with planking; that while the
intestate was starting up the embankment for this purpose, the earth and rock
fell upon him and killed him.

*Held,* that the risk which the intestate encountered was one which was assumed
by him, or one which related to a detail of the work in which he was engaged,
and that in either event the defendant was not liable.

APPEAL by the plaintiff, Jennie A. Batty, as administratrix, etc.,
of William H. Batty, deceased, from a judgment of the Supreme
Court in favor of the defendant, entered in the office of the clerk
of the county of Niagara on the 5th day of May, 1899, upon a non-
suit directed by the court after a trial at the Niagara Trial Term.

The defendant is the owner of a surface canal, the water of which
is used for the development of power at the city of Niagara Falls,
the water being taken from the river at a point above the falls and
conducted to the brink of a bank below the falls, which is about 200
feet above the level of the river.

In the spring of 1896 the defendant was engaged in the construc-
tion of a power plant at the foot of this bank, and to that end was
intending to conduct the water from the top of the bank to a point
underneath its power house by means of a penstock, for which an
excavation had been made in the rock which covered the surface of
the embankment.

For about one-half its distance from the bottom this embankment formed a slope at an angle of about forty-five degrees, and for the remaining distance of 100 feet it was almost or quite perpendicular. The slope at the lower end was covered with a layer of debris of rock and earth which had fallen from above. Underneath this debris was soft or shale rock, and still below this was a bed of limestone.

The plaintiff's intestate was a carpenter by trade and had been in the defendant's employ for the period of about one year, doing whatever work was required of him.

In the fall preceding the accident, to which reference will be hereafter made, he, with others, was engaged for several weeks in clearing the surface of the embankment of loose dirt and rocks which had lodged there, by means of a hose which threw a stream of water so powerful that it drove all loose debris into the river, but it failed to remove some of the rocks which had become imbedded in the surface of the bank. As a consequence when a thaw occurred in the spring many of these rocks and the loose earth surrounding them would fall to the bottom of the slope and endanger the persons and lives of the men at work there.

In the spring of 1896 the penstock had not been constructed, but the work of excavation therefor had been completed and the defendant was preparing to build the rear wall of its power house upon one of the ledges of rock near the water level, and in order that this work might proceed with as little danger as possible to the workmen engaged thereon, the plaintiff's intestate, with others, was engaged in clearing off. or supporting any loose earth or rocks in the upper embankment which threatened danger.

On the 13th day of April, 1896, the sun came out bright and warm, and the plaintiff's intestate, with a fellow-workman, had gone up the slope on the north side of the penstock cut in a scale box, which was raised and lowered by means of a derrick, and had spent the forenoon in clearing the upper bank of earth and stones which had been loosened by the warmth of the sun and were likely to fall, and was intending to continue that occupation in the afternoon upon the south bank of the cut.

Upon this portion of the embankment there was a rock and some bad ground, as it was called, which seemed to threaten danger, and

an effort had been made to remove the same, but this was found to be impossible of accomplishment by reason of the frost remaining in the ground. On the day above mentioned, Batty, the plaintiff's intestate, had been directed by the defendant's foreman to run a plank across this bad ground so as to prevent its falling upon the men at work below, and was about going up in the scale box for this very purpose when, as he stepped out to get a bar, the earth and rock fell, striking him upon the head and injuring him so severely as to cause his death.

*C. S. Crosser* and *Minor K. Johnston,* for the appellant.

*Alfred W. Gray,* for the respondent.

ADAMS, P. J.:

This is not a case which calls for the application of the rule that a master is bound to use all reasonable efforts to make the place in which he places his servants at work reasonably safe.

The " place," it is true, was a somewhat dangerous one, made so however, by the operation of nature and by the progress of the work in which the defendant was engaged; but this danger, such as it was, was perfectly obvious to Batty and his fellow-workmen.

Unavailing efforts, it seems, had already been made to remove this rock or bad earth, and it was while starting up the bank by direction of his foreman for the express purpose of placing some planking in position to catch and hold the same and thereby to protect himself and his coemployees from the danger which threatened them, that Batty was killed. We think it very clear, in view of this established fact, that in the circumstances of this case the risk was either one which was assumed by Batty, or else one which related to the detail of the work in which he was engaged, and that in either event no liability attaches to the defendant for his death.

The Court of Appeals has recently in several instances laid down the rule which is applicable to cases of this character.

In *Perry* v. *Rogers* (157 N. Y. 251), which was a case where the place in which the plaintiff had been directed to work had become unsafe by reason of some overhanging rock caused by a blast, and *no effort had been made to remove the same,* it was held that whatever negligence there was in the omission to clean off the bench

and protect the plaintiff from the danger which threatened him from above, was the negligence of the defendant's foreman, for which the master was not liable, as it was a mere detail of the work in which both the plaintiff and the foreman were engaged.

The doctrine of this case was followed in *Capasso* v. *Woolfolk* (163 N. Y. 472), where an unsuccessful attempt had been made by the defendants' foreman to remove a loose stone which had been left in a rock cutting as the result of a blast and subsequently fell upon and injured the plaintiff, who had been directed by his employer to work under the same. It was held that if such accident was occasioned by anybody's negligence it was that of the foreman, who was a fellow-servant of the plaintiff, and that consequently the risk was one which the plaintiff assumed when he entered upon his employment.

In a still later case (*Di Vito* v. *Crage*, 165 N. Y. 378), which in many respects is quite analogous to the one under review, it was held that in an action to recover damages for personal injuries, where it appeared that plaintiff had been in the defendants' employment for several months and had been directed by their foreman to remove loose pieces of rock that should be found along a bank so as to render a continuance of blasting safe, and while engaged in so doing, a large stone, which had been thrown on top of the bank by a previous blast in the prosecution of the general work and had rested there until the accident, and which the defendants had directed the foreman to remove, fell and striking the plaintiff caused the injuries complained of, a recovery could not be sustained, since they were the result of a risk which plaintiff assumed as an incident to the employment in which he was engaged, and if the result of any negligence it was that of the foreman, a fellow-servant, for which the defendants would not be responsible. Referring to the *Perry* and *Capasso* cases, above cited, as authority for the statement, MARTIN, J., in his opinion declares that "If the plaintiff's injury had resulted from the falling of a loosened rock upon the side of the cliff, this case would clearly fall within the principle established by (those) cases and the judgment could not be sustained." (Id. 383.)

We think there is even less ground for a recovery by the plaintiff in this action than in either of those above cited, inasmuch as

her intestate lost his life while in the attempt to make a place safe for his fellow-workmen.

It would be an anomalous condition of affairs which would impose upon the master, as a consequence of his efforts to safeguard his employees, liability for an injury resulting to one of them from the very danger which he was seeking to avoid and which was perfectly apparent to the person attempting to remedy the same. Such a rule would require that the master must either personally take such steps as are necessary to protect his employees from dangers which confront them or else run the hazard of being mulcted in damages for any accident which may result therefrom.

The judgment appealed from should be affirmed.

McLENNAN, SPRING, WILLIAMS and HISCOCK, JJ., concurred.

Judgment affirmed, with costs.