## THOMAS v. GEORGIA GRANITE COMPANY et al.

1. The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place, or one which is quasi permanent. It does not apply to such places as are constantly shifting and being transformed as a direct result of the servant's labor, and where the work in its progress necessarily changes the character for safety of the place in which it is performed as it progresses.
2. A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself.
3. There was no error in dismissing the petition on general demurrer.

AUGUST 12, 1913.

Action for damages. Before Judge Bell. Fulton superior court. April 15, 1912.

Jennie Thomas instituted an action against the Georgia Granite Company and E. B. Respass, to recover damages for the homicide of Scott Thomas, the plaintiff's husband. Relatively to the manner in which Thomas was injured the petition alleged the following in substance: In January, 1912, the defendants, under a contract with the City of Atlanta, were engaged in constructing a

sewer along Barnett street. Thomas was working for them as a laborer. Preparatory to laying the sewer the defendants were opening a ditch, and had opened it part of the way along Barnett street, and at the point where Thomas was killed it was about 10 or 12 feet deep and 2 or 3 feet wide. Under instructions from defendants, who had a foreman present, Thomas was working in the bottom of the ditch, engaged in throwing out dirt. While so engaged a large amount of dirt caved in, mashing and injuring him to such an extent that he died. Other allegations were, that the dirt caved in because the sides of the ditch were not braced or propped, and had nothing to support the dirt and prevent it from caving for a distance of 20 feet or more along the street. Ordinary care upon the part of the defendants would have required braces or props to support the sides of the ditch every 5 or 6 feet; but the defendants negligently failed to have any props or braces for 20 or 30 feet from where Thomas was working. The defendants knew, or ought to have known, that the place was unsafe; and Thomas was free from fault and by the exercise of ordinary care could not have prevented the injury. On general demurrer the petition was dismissed, and the plaintiff excepted.

*Moore & Branch,* for plaintiff.

*James L. Key* and *Tindall & Silverman,* for defendants.

ATKINSON, J. 1. On demurrer this petition is to be construed most strongly against the plaintiff. The allegations that the defendants knew, or ought to have known, that the place was unsafe, amount to no more than a charge of implied notice that the place was unsafe. *Babcock Lumber Co.* v. *Johnson,* 120 *Ga.* 1030 (6), 1034 (48 S. E. 438); *Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (70 S. E. 792). The general charge that the plaintiff's husband was free from fault, and by the exercise of ordinary care could not have prevented the injury to himself, when considered in connection with the other allegations of the petition in regard to the work which he was doing, and his opportunity to see and know the dangers of the place, are mere conclusions of the pleader, and add nothing to the special facts alleged upon which the court is to pass in determining whether the husband was free from fault, and whether by the exercise of ordinary care he could have prevented the injury to himself. There being no allegations to the contrary, it must be assumed that he was of ordinary intelligence and skilled

in the business in which he was engaged, and that he was laboring under no physical defect or disability which rendered him incapable of appreciating the situation and knowing the danger incident to his employment. The sides of the ditch caved in at the very place where he was working. He was engaged in throwing out dirt from the bottom of the ditch. It is inferable that the work which he was doing tended directly to undermine the walls and to render the place unsafe. Such would be the natural result, and there was no allegation that it did not do so, and that his work did not cause the walls of the ditch to cave. The facts bring the case within the principle of *Holland* v. *Durham Coal & Coke Co.*, 131 *Ga.* 715 (63 S. E. 290), where it was held: "The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place, or one which is quasi permanent. It does not apply to such places as are constantly shifting and being transformed as a direct result of the servant's labor, and where the work in its progress necessarily changes the character for safety of the place in which it is performed as it progresses." This principle was overlooked in the decision of the case of *Southern Bauxite Mining Co.* v. *Fuller*, 116 *Ga.* 695 (43 S. E. 64), which was not rendered by an entire bench of six Justices. The *Holland* case was decided by six Justices, and is controlling. See also Citrone *v.* O'Rourke Engineering Con. Co., 188 N. Y. 339 (80 N. E. 1092, 19 L. R. A. (N. S.) 340, and note 3-e on page 358). The basis of the suit was that the defendants had failed to provide the servant with a safe place at which to work. It appearing from the allegations that on account of the character of the work in which the servant was employed, the master was not under duty to furnish him a safe place, the court properly sustained the demurrer.

2. The case involves the further principle of assumption by the servant of the ordinary risks of the employment, against the dangers of which he is bound to exercise his own skill and diligence to prevent injury to himself. The plaintiff's husband was employed to make a ditch. This involved the creation of the danger from which he suffered injury. He was bound to know that under natural laws there would be more or less danger of the sides caving in as the work of deepening the ditch progressed. It was not alleged that there was anything unusual about the soil, which the

master knew, which the servant did not know and by the exercise of ordinary care could not ascertain, and which caused the sides of the ditch to cave in; but the complaint is that the sides caved in because they were not braced at the proper interval, and the only ground of negligence charged against the master consisted in allegations of failure to cause the braces to be erected at closer intervals. From these allegations it appears that the injury was received from a danger that would ordinarily and naturally exist in doing the work which the servant was employed to perform. But this is not all. The servant could not have engaged in the work without knowing and seeing the braces and the intervals at which they were placed, or, in other words, without seeing the identical condition which, as grounds of negligence, it is alleged that the master allowed to exist. The case of *Ludd* v. *Wilkins,* 118 *Ga.* 525 (45 S. E. 429), did not refer to an injury received in excavating a ditch, but the principle of the case is applicable. In that case the defendant was engaged as a contractor in constructing in the City of Atlanta what is known as the Whitehall street viaduct. The servant was engaged at work upon the viaduct, and at the time of receiving the injury which resulted in his death was engaged in putting in place a piece of iron and standing on or near iron brackets which received these iron pieces. Planks had been placed, extending from one bracket to the other, for employees to stand upon while engaged at work. These planks were apt to slip off the brackets. There was evidence that this slipping could have been prevented by nailing pieces under each end of the plank, or by putting a bolt through each end, or a ten-penny nail, or by tying the plank to the bracket. None of these methods were adopted. The plank was laid loosely upon the brackets. There was no evidence that there were any defects in any of the planks. The plank upon which the servant was standing had slipped to a point where walking upon it would cause one end to leave the bracket; and this precipitated him to the street below, and he died as a consequence of this fall. It was alleged that the defendant negligently failed to have the plank so braced or secured as to prevent the same from slipping; and that it was the defendant's duty to furnish the deceased with a safe place to work, and to do this it was incumbent upon him to have the plank securely fastened. The court granted a nonsuit. In affirming the judgment this court held: "This

being an action against a master to recover damages for the homicide of a servant, and it appearing from the evidence that even if the servant did not know of the fact which is charged as negligence against the master, he had equal means with the master of knowing it and by the exercise of ordinary care could have discovered the same, there was no error in granting a nonsuit." A somewhat similar case is that of *Southern Railway Co.* v. *Taylor,* 137 *Ga.* 704 (73 S. E. 1055), where the rule in regard to the assumption by the servant of the ordinary risks of his employment was applied. Some of the cases in other States which apply the doctrine of assumption of risks, where the persons injured were engaged in the work of excavating trenches and the like, are: Brown *v.* Electric Ry. Co., 101 Tenn. 252 (47 S. W. 415, 70 A. S. R. 666); Olson *v.* McMullen, 34 Minn. 94; Swanson *v.* Great Northern R. Co., 68 Minn. 184 (70 N. W. 978); Pederson *v.* City, of Rushford, 41 Minn. 289 (42 N. W. 1063); Regan *v.* Palo, 33 N. J. L. 30; Carlson *v.* Sioux Falls Water Co., 8 S. D. 47 (65 N. W. 419); Zeigenmeyer *v.* Charles Goetz Lime & Cement Co., 113 Mo. App. 550 (88 S. W. 139); Batty *v.* Niagara Falls Hyd. Power Co., 79 App. Div. 466 (79 N. Y. Supp. 734); Hughes *v.* Malden & Melrose Gas Light Co., 168 Mass. 395 (47 N. E. 125). See Bailey on Personal Injuries (2d ed.), 1230.

3. There was no error in dismissing the petition on general demurrer.      *Judgment affirmed.   All the Justices concur.*