## COWART v. SOUTHERN MARBLE COMPANY.

1. The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place or one which is quasi permanent. It does not apply to such places as are constantly shifting and being transformed as a direct result of the servant's labor, and where the work in its progress

necessarily changes the character for safety of the place in which it is performed as it progresses.

2. A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself.

3. There was no error in dismissing the petition on general demurrer.

NOVEMBER 12, 1915. REHEARING DENIED DECEMBER 18, 1915.

Action for damages. Before Judge Patterson. Pickens superior court. December 22, 1914.

*F. C. & Howard Tate* and *McCallum & Sims,* for plaintiff.

*A. H. Davis* and *C. B. Atkins,* for defendant.

ATKINSON, J. In the bill of exceptions error is assigned upon a judgment sustaining a demurrer to a petition in a suit by a widow for the homicide of her husband, alleged to have been caused by the negligence of his employer in failing to furnish him a safe place in which to work. According to the allegations of the petition, the homicide occurred under the following circumstances: The defendant, the proprietor of a marble mill, maintained a storage yard adjoining the mill, where large blocks of marble, finished and unfinished, were stored. Certain railroad-tracks extended through the yard over which the marble was carried. In handling the marble blocks it was customary to lift them from one place and deposit them at another by means of a steam-crane, to which were attached certain chains and implements called "dogs," which would be attached to the blocks as they were lifted and detached as they were deposited. Plaintiff's husband was employed to work in and about the mill and yard under the direction of a named person as superintendent. One of his duties was to attach the "dogs" to blocks of marble that would be raised, and follow the crane to the place of deposit, and detach the "dogs" when the blocks were swung to the desired position of deposit. The storage yard was situated between a branch and the base of a steep hill, and on occasions of rainfall the water would run down the hill into the storage yard. Formerly ditches had been maintained to carry off the water, but they had been permitted to become so stopped up that the water remained many days at a time, slowly seeping and percolating through the ground. During the month in which the homicide occurred there had been much rain, and the ground on which the marble was stored became "soft and soggy." On the day of the homicide, among others, there was a stack of unfinished marble blocks on the yard, which had been

in position for more than four months, which plaintiff's husband was called upon to assist in moving. The blocks were arranged in the following manner: One of them, of the dimensions of 1x2x14 feet, was placed on the ground at right angles to the railroad-track, resting on the one-foot surface. Another of the same dimensions was placed lengthwise immediately above it, resting also on its one-foot surface. The two surfaces thus placed in contact were not cut evenly, and the top piece could be moved in seesaw fashion lengthwise while resting on the lower or bottom piece. Each piece weighed approximately 5,000 pounds, and in the position above stated the two pieces formed a body extending upward four feet and rested on a base one foot wide. At the base and as near thereto as possible was a third piece of the dimensions of 1 ft. 8 in. x 1 ft. 10 in. x 12 ft. The latter piece acted as a support for the two pieces first mentioned, and kept them upright and from falling over sidewise as long as it was allowed to remain in that position. The pile or stack of blocks above described was laid at right angles to the railroad-track across an old road-bed where a railroad-track had been formerly maintained. The length of the blocks was such that the ends extended beyond the road-bed for a distance of more than three feet on the south and more than two feet on the north. No steps had been taken to prop the ends or place thereunder a solid foundation, but they were left standing without support except such as they received in the middle while lying across the old road-bed. On the date of the injury the two pieces of marble, stacked as above described, extending upward four feet and resting on their narrowest side across the old road-bed, were dependent on the third piece, above mentioned, to maintain and retain a balance in the "soft and soggy ground." Under these circumstances the plaintiff's husband, acting under the direction and control of a named third person as superintendent, accompanied the steam-crane and a flat car to the point at which the marble blocks were stacked. In pursuance of his duty and directions, he attached the "dog-chains" to each end of the marble block above described as resting at the base of the two which were piled one upon the other, preparatory to loading it on the flat car by means of the steam-crane. When the chains had been fastened to the ends of the mrable blocks, the crane hoisted it in the air and held it suspended until petitioner's

husband could hasten up to and upon the car to receive the marble block. In the immediate vicinity there were piled other marble blocks of various sizes, and there was a dense growth of vegetation, so that the only means provided by defendant for petitioner's husband to reach the car was by going over the ground formerly occupied by the piece of marble which had just been raised by the steam-crane. He had taken but two or three steps in the direction of the car along the route mentioned, when, "suddenly and without any warning, and with frightful rapidity, by reason of the defective and dangerous manner in which they had been piled and by reason of the uneven manner in which they had been cut and sawed before being piled, and by reason of the action of the vibration caused by the operation of the said steam-crane on the soft and soggy earth on which they had been piled and allowed to stand for a long period of time, . . the upper piece of the aforesaid two pieces of marble . . fell sideways on her said husband," thereby causing the injury resulting in his death. Other allegations were, that the defendant by the exercise of reasonable care "might have known and did know" of the dangerous character of the ground on which it had caused the blocks of marble to be stored, and of the dangerous manner in which the blocks of marble were piled; that by removing the third block while it was supporting the other two pieces of marble on "the damp and soggy" ground, without taking any steps to prevent the toppling over thereof, the defendant negligently subjected her husband to extraordinary risks and hazards in his employment; and that at the time of his injury the plaintiff's husband was in the exercise of due care, and that he was not aware of the defective and dangerous character of the ground or manner in which said blocks had been piled or allowed to remain. The petition concluded by alleging grounds of negligence as follows: (a) "In not furnishing petitioner's husband a safe place in which to work." (b) "In allowing said blocks of marble 1 ft. x 2 ft. x 14 ft. to be piled on the old road-bed so that the ends thereof extended beyond and over said road-bed, and without placing thereunder props or foundation of suitable character." (c) "In not providing said storage yard with adequate means for draining off the water that collected thereon." (d) "In allowing said blocks of marble 1 ft. x 2 ft. x 14 ft. to be piled on soft and soggy ground and on their

narrowest sides, and in allowing the contour of the ground in the vicinity thereof to become obscured by a dense growth of vegetation." (e) "In allowing the said piece of marble 1 ft. 8 in. x 1 ft. 10 in. x 12 ft. to be withdrawn from the support of the two pieces of marble 1 ft. x 2 ft. x 14 ft., without taking any steps to safeguard said two pieces of marble from toppling over." (f) "In failing to notify and warn petitioner's husband of the dangerous manner in which said marble had been piled." (g) "In using, in close proximity to said defectively piled pieces of marble, a powerful and heavy steam-crane in removing said piece of marble 1 ft. 8 in. x 1 ft. 10 in. x 12 ft., the operation of the engine of which said steam-crane caused the soft and soggy ground to vibrate and unsteady said defectively piled pieces of marble, and to further settle in an uneven manner in said soft and soggy ground, and to throw said marble blocks as piled out of plumb, so that they toppled over when the support had been removed from the base thereof." (h) "In failing to provide a safe passageway for petitioner's husband to use in reaching said flat car, and in causing and compelling him to pass between huge blocks of marble that had been piled in a defective and dangerous manner on soft and soggy ground on an old road-bed."

After stating the allegations of the petition, it is necessary to add but little by way of elaboration. Much that is alleged, as to knowledge by the master of the conditions existing at the time of the injury, and as to negligence upon its part, and of the want of knowledge and exercise of care upon the part of plaintiff's husband, amounts to conclusions of the pleader, which in both instances must depend upon the particular facts upon which the conclusions are based. The petition is to be taken most strongly against the pleader. In the case of Holland v. Durham Coal &c. Co., 131 Ga. 715 (63 S. E. 290), it was said: "The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place, or one which is quasi permanent. It does not apply to such places as are constantly shifting and being transformed as a direct result of the servant's labor, and where the work in its progress necessarily changes the character for safety of the place in which it is performed, as it progresses." This doctrine has later been applied to the case of a person who was employed to cut down a tree

and was injured by its falling. *Hagins* v. *Southern Bell Telephone Co.*, 134 *Ga.* 641 (68 S. E. 428, 137 Am. St. R. 270, 20 Ann. Cas. 248). In another instance it was applied where a person was employed to make an excavation, and the soil caved in upon him. *Thomas* v. *Georgia Granite Co.*, 140 *Ga.* 459 (79 S. E. 130). In the latter case the existence of the danger to the servant was held to be obvious and to have been assumed by him as an ordinary risk of his employment. In neither of the cases were the facts exactly similar to those involved in the present case, but the principles of each are applicable. Here the work which the injured person was employed to perform tended directly to make the place at which he was employed unsafe. The condition of the soil and the manner in which the marble slabs were stacked were obvious to the plaintiff's husband as a man of ordinary intelligence. Under the circumstances as they openly appeared, there was a probable danger that upon removing the slab which served as a support for the other two, in obedience to natural laws, the latter would fall over. The risk of danger therefrom was one of the ordinary risks of the employment which was assumed by the servant when he undertook to remove the supporting column. It is suggested in the brief of counsel for the plaintiff that the blocks did not fall over immediately upon removing the support, but that they fell after an interval on account of being improperly piled; but the facts alleged do not bear out such an inference. If the collapse did not occur coincidently with the removal of the support, it was so closely connected therewith as to show that it was produced by the removal of the support, and was such a result as might ordinarily be expected. Under the circumstances set out in describing the catastrophe, there was no error in dismissing the petition on demurrer.

*Judgment affirmed. All the Justices concur, except Beck, J., absent.*