COUNTY OF GUILFORD ET AL. v. W. C. PORTER ET AL.

(Filed 8 December, 1915.)

1. Easements—County—Deeds and Conveyances—Reservations—Reconveyance—Release.

A deed by a county to lands adjoining its courthouse square upon agreement that the land at a certain location shall forever be kept open as vacant and unoccupied ground, except such obstruction as may be made by shade trees planted thereon, extends the benefit of the reservation of its use only to the property conveyed, and not to other property differently situated and not adjoining, owned by the grantee; and where the property thus conveyed has since been acquired by the county, the reconveyance in fee simple releases the easement created under the conveyance made by the county.

2. Easements—Deeds and Conveyances—Reservations—Public Squares—Courthouse Squares—Counties.

A conveyance to a county of a lot adjoining its courthouse square, reserving an easement therein that the "lot herein conveyed" shall be used by the county "as a public square," and if any building inconsistent therewith shall be erected "thereon" the grantor, his heirs and assigns, "may enter upon the lands herein conveyed" and remove any building thereon inconsistent with its use as a public square: *Held*, no restriction is therein imposed upon the county in the use of the adjoining square, whether existing at the time or thereafter acquired by it, and the easement is preserved intact so long as the land conveyed is used as a "public square," not necessarily a part of the courthouse square.

3. Easements—Counties—Statutes—Contracts—Deeds and Conveyances—Reservations.

The Legislature authorized Guilford County to purchase additional adjoining lands to the courthouse square, reciting that it was for the purpose "to lessen the danger from fire": *Held*, no easement arises except from the contract of the parties, and in this case none could be imported into the conveyance of land to the county in favor of the grantor merely by virtue of the recital of the act, for an easement is never inferred in favor of a grantor, but must be expressly reserved in the conveyance.

APPEAL by plaintiff from *Justice, J.*, at September Term, 1915, of GUILFORD.

This action was brought by the county to remove an alleged cloud upon title on that portion of the courthouse square which was acquired in 1873 from Porter, Caldwell, Gorrell, Hinton and Staples. The case was before us, *Guilford v. Porter*, 167 N. C., 366. To the judgment

entered on the opinion from this Court the plaintiff excepted and appealed.

*John N. Wilson for plaintiffs.*

*Manly, Hendren & Womble, A. Wayland Cooke, R. W. Harrison and A. M. Scales for defendants.*

CLARK, C. J.   The county of Guilford purchased the property now known as the courthouse square in Greensboro from several persons. On 28 June, 1858, it purchased from Solomon Hopkins the ground upon which the present courthouse stands.   By ch. 16, Laws 1872-1873, the commissioners of Guilford were authorized to build a new courthouse and to enlarge the public square and, for that purpose, to purchase additional real estate surrounding said courthouse in order to lessen the danger from fire.

Pursuant to said act a deed was executed to the county by A. A. Hinton 1 February, 1873, for that portion of the present square marked on the map, "from Hinton."   This deed was in fee simple and mentioned no easement of any kind.   On 3 February, 1873, the county purchased the lot north of the Hopkins purchase, marked on the plat, "from Staples," and a deed in fee simple was executed to the county therefor, the deed to this lot stating that part of the consideration therefor was the conveyance by the county of a certain piece of land in exchange therefor, and on the same day the county of Guilford conveyed to Staples the lot just north of the property conveyed to the county by him, to wit, the lot marked on the map, "from Mendenhall," and in this deed by the county was the reservation that the county agreed that the "lot or parcel of land lying between said brick building and the courthouse on which formerly stood the office of C. B. Mendenhall shall forever be kept open as vacant and unoccupied ground, except such obstructions as may be made by shade trees thereon planted, and they shall not be planted within twenty feet of said brick building, and then only in such manner as will leave free ingress and egress to said brick building on the south side thereof."

This lot has since been purchased by the county from W. P. Bynum before this action was brought, and a deed therefor has been executed to the county in fee simple.   Neither the lot purchased by the county from Staples nor the lot exchanged to Staples and since reconveyed by his assignee, Bynum, to the county, adjoins any property of the defendants, nor did it adjoin any property of W. C. Porter and W. A. Caldwell.

On 4 February, 1873, the county of Guilford purchased from Ralph Gorrell the tract marked on the map, "from Gorrell," and obtained a deed in fee simple therefor, with no condition or easement mentioned therein.

On 5 February, 1873, the county purchased from W. C. Porter the lot marked on the map, "from Porter," and in said deed was a provision

GUILFORD COUNTY *v.* PORTER.

that *said lot* "shall be used by the said party of the second part as a public square and be forever kept open for that purpose, and should any building or structure of any character inconsistent with said purpose be erected *thereon* the said party of the first part, his heirs or assigns, may enter *upon the land herein conveyed* and abate and remove any and all buildings or any parts of buildings inconsistent with its use as aforesaid."

On 5 February, 1873, the county purchased from W. A. Caldwell the lot marked on the map, "from Caldwell," and in said deed was the same provision as that contained in the deed from W. C. Porter.

On 5 February, 1873, the county of Guilford conveyed to W. A. Caldwell in fee a portion of the land purchased from Gorrell, to wit, the western portion of the tract marked on the map, "from Gorrell," and which is now the eastern half of the lots of the defendants Bynum, Barringer and Cooke, east of the dotted line on the map. This deed was in fee simple, and in it there was no mention of an easement, and there was none, as already stated, in the conveyance from Gorrell to the county.

On 7 June, 1911, the county acquired, as above stated, from W. P. Bynum, who held by mesne conveyances from Staples, a fee-simple deed for the lot marked on the map, "from Staples."

The defendants Barker and Sockwell acquired title to the two lots marked in their names on the map by mesne conveyances from W. C. Porter. The deed from Porter to his first grantee, Sykes & Son, was executed 1 October, 1874, and made no mention of an easement.

The defendant A. W. Cooke acquired title to the lot marked on the map with his name by mesne conveyances from W. A. Caldwell. The deed from said Caldwell to his first grantee, L. M. Scott, is dated 12 May, 1873, and makes no mention of an easement.

The defendant W. P. Bynum acquired title to the lot marked on the map in his name by mesne conveyances from W. A. Caldwell. The deed from said Caldwell for this lot to his first grantee, Scales & Scales, is dated 9 June, 1873, and makes no mention of any easement.

The defendant J. A. Barringer acquired title to the lot marked on the map in his name by mesne conveyances from W. A. Caldwell. The deed from said Caldwell for this lot to the first grantee, John W. Payne, is dated 13 September, 1873, and makes no mention of any easement.

The conditions or easements contained in the deed of the county to Waller R. Staples were intended for the benefit only of the property conveyed by that deed, and this Court did not intend to extend these conditions or easements to the property of the defendants which were never owned by said Staples and which do not adjoin any land ever owned by him. The conveyance back to the county by W. P. Bynum

in fee simple of the lot which the county had conveyed to Staples released the easement set out in the deed from the county to Staples, which is for the lot marked on the map, "from Mendenhall."

The eastern half of the lots of Wayland Cooke, J. A. Barringer and W. P. Bynum (except a very small strip at the south end of the Cooke lot) is held under mesne conveyances from Gorrell, who conveyed to the county in fee without easement, and the county conveyed to W. A. Caldwell, without easement, who in turn conveyed without easement.

It follows from the above statement that the only property which the county owns within its present square on which there is an easement is that which is marked "from Porter" and "from Caldwell," east of the Barker and Sockwell line. When this case was here before the county contested the validity of the reservation of an easement by Porter and Caldwell, and that it ran with the land. We held against the county on this, but did not pass upon the extent of the easement. The easement reserved in these two lots (and there is no reservation in the other conveyances) is very explicitly stated in the deeds from W. C. Porter and W. A. Caldwell to the county 5 February, 1873, *i. e., "The lot herein conveyed"* shall be used by the county "as a public square," and if any building inconsistent therewith shall be erected *"thereon"* the grantor, his heirs and assigns, "may enter upon *the land herein conveyed"* and remove any buildings thereon inconsistent with its use as a public square. There is no easement in favor of Porter and Caldwell reserved in, or restrictions imposed upon, the use of the adjoining square, whether already owned or thereafter to be purchased by the county. So long as the county uses these two lots as "a public square" the easement is intact. There is no obligation even in the conveyance that these lots should be a part of the courthouse square.

The recital by the Legislature, as one of the motives for the act authorizing the purchase of additional land for courthouse purposes, "to lessen the danger from fire," can not be imported into these deeds as an easement. An easement arises from the contract of the party. Otherwise, whenever a town, county, or the State shall purchase property for a public purpose it will become inalienable under penalty of paying the adjacent proprietors damages in case the public interests shall require a sale of the property. Here there was no stipulation giving the grantors of these two lots any easement in light or space as to the courthouse square any more than the grantors possessed such right in regard to the other adjoining lot-owners. The only stipulation was that the lots conveyed by Porter and Caldwell should be kept open for a public square. This did not give the grantors an easement in the courthouse square already owned by the county, but reserved to them, their heirs and assigns, that these lots should be an open space, with provision

for an entry on these two lots to remove any buildings thereon which should be inconsistent with the use of these lots as a public square.

It is because there was no other easement than in these two lots themselves that in the first grants made thereafter of land on the west of these lots by Porter to Sykes & Son and L. M. Scott, and in the first grants from Caldwell, which were to Scales & Scales and John W. Payne, under which, by mesne conveyances, the other defendants claim, there was no mention of an easement, for the very simple reason that these other lots had no easements. The only easement reserved was, as specifically stated in the grants to the county, in the two lots conveyed to the county that they should not be built upon except for purposes consistent with their use as a "public square"—not necessarily a courthouse square. There is no contract that they shall be used in connection with the courthouse square, and a deed is to be construed most strongly against the grantor. An easement is never to be inferred, but must be expressly reserved.

The court below erred in the judgment rendered, and it will enter its judgment in accordance with this opinion.

Reversed.