*T. N. Brown* and *Saffold & Jordan,* contra.

---

CENTRAL OF GEORGIA RAILWAY COMPANY *v.* TAPLEY.

ATKINSON, J. 1. The statute as embodied in the Civil Code, §§ 2675-2679, known as the blow-post law, is not applicable to a crossing where the railroad-tracks cross a public highway by means of a trestle over the public road. *Barton* v. *Southern Ry. Co.,* 132 *Ga.* 841 (64 S. E. 1079, 22 L. R. A. (N. S.) 915, 16 Ann. Cas. 1232).

2. An allegation in a petition that a person knows or by the exercise of ordinary care ought to know a given fact is not an allegation of actual notice of such fact. *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459 (79 S. E. 130).

3. Mere allegations that for a long time the public generally have continuously used a well-defined pathway in a populous rural district that extends along a railroad-track on an embankment immediately outside of the rails until it reaches a trestle and then crosses the outside rail and continues over the trestle between the rails are insufficient to allege an implied license by the railroad company to the public to use the trestle as a pathway, or to show that the employees of the company in charge of the train were bound to anticipate that a person might be upon the track at that place. *Gulf Line Railway Co.* v. *Way,* 137 *Ga.* 109 (72 S. E. 917).

(a) In the cases of *Ashworth* v. *Southern Ry. Co.*, 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592), *Bullard* v. *Southern Ry. Co.*, 116 *Ga.* 644 (43 S. E. 39), *M. & B. R. Co.* v. *Parker*, 127 *Ga.* 471 (56 S. E. 616), and *L. & N. R. Co.* v. *Rogers*, 136 *Ga.* 674 (71 S. E. 1102), decided on demurrer, the petitions alleged that the use of the property of the railroad company by the stranger at the place of the injury was by the knowledge and acquiesence of the company and its servants engaged in operating the train.

(b) The case of *Wright* v. *Southern Ry. Co.*, 139 *Ga.* 448 (77 S. E. 384), and cases cited on page 450, other than those distinguished above, were decided upon the question of the sufficiency of evidence. In dealing with such questions, latitude is allowed for drawing reasonable inferences and deductions from the evidence to support the plaintiff's case; whereas on questions raised by demurrer a petition is to be construed most strongly against the pleader.

4. The duty of a railroad company to exercise ordinary care to avoid injuring trespassers on its tracks, at places other than those where the servants of the railroad company engaged in operating trains have reason to anticipate the presence of trespassers on the tracks, does not begin until the presence of the trespassers on the tracks becomes known to the servants of the railroad company operating the train. *Atlanta &c. Air-line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145); *Hambright* v. *W. & A. R. Co.*, 112 *Ga.* 36 (37 S. E. 99). A petition in a suit against a railroad company for the homicide of a pedestrian on the tracks of the defendant, which shows upon its face that the person killed was a trespasser using a dangerous railroad trestle as a pathway, and fails to allege facts showing that the place was one known by the servants of the defendant operating a train to be one where the presence of persons was to be anticipated, and that they injured him without exercising ordinary care to discover his presence, or that the presence on the track of the person killed was actually known to them and, after being aware of his presence, they failed to exercise ordinary care to avoid injuring him, fails to allege a cause of actionable negligence against the railroad company.

5. Where a person who is killed by the running of a railroad-train could by the exercise of ordinary care for his own safety have avoided the consequences to himself of the defendant's negligence after it came into existence and was known to him or could have been discovered by the exercise of ordinary care, an action for damages against the railroad company on account of negligence will not lie. Civil Code, §§ 2781, 4426.

(a) The allegations of the petition as set forth in the statement of facts show such negligence upon the part of the person killed, and the absence of ordinary care to avoid any negligence upon the part of the defendant, as would prevent a recovery of damages for the homicide. *Phillips* v. *East Tenn., Va. & Ga. Ry. Co.*, 87 *Ga.* 272 (13 S. E. 644); *Roach* v. *Atlanta &c. Ry. Co.*, 119 *Ga.* 98 (45 S. E. 963).

6. It was erroneous to overrule the general demurrer to the petition. In

view of this ruling, it becomes unnecessary to deal with the assignments of error based on the several grounds of the motion for new trial. *Judgment reversed. By five Justices, all concurring.*

SEPTEMBER 12, 1916.

Action for damages. Before Judge Park. Emanuel superior court. April 14, 1915.

In an action for damages against a railroad company by a widow for the homicide of her husband, the petition alleged that the homicide occurred about 12 o'clock in the day, under the following circumstances: Between the town of Adrian and Peddy's station on the defendant's railroad and about one and one half miles east of the first-named place is a railroad trestle approximately 120 feet long, 22 feet high, and nine feet wide, under which passes a public highway known as the Wrightsville road. A curve to the left in the railroad-track commences at "Skinners Cut" about fifteen hundred feet east of the trestle, and the track straightens about one thousand feet before reaching the trestle. The distance between Peddy's station, a populous community, and Adrian along the railroad-track is about half that along the public road, and the public generally have continuously for a long time used a well-defined pathway extending along the road-bed, "parallel to the track immediately outside of the rails thereof until it reaches the aforesaid trestle, then crosses the outside rail of said track and runs over said trestle parallel with and between said rails." On the day of the homicide the plaintiff's husband was walking from his home to Adrian, using the pathway, and when on the trestle and about forty feet from the west end, being about two thirds across it, the defendant's passenger-train from the east came around the curve behind him at the rate of about forty-five miles per hour. When it came in view he saw it and "quickened his speed immediately," and started to run, and when at a point seven feet from the west end of the trestle, while "running fast as possible," he was struck by the engine. In approaching, it was possible for the fireman seated on the left to have seen him for a distance of about seven hundred and fifty-nine feet, and for the engineer seated on the right to have seen him about three hundred and fifty-nine feet. The train sounded no whistle or other alarm until it reached the eastern end of the trestle, not more than 125 feet from plaintiff's husband, and the brakes were not applied until immediately before striking him, and the speed was slackened but little if any.

The train was light; and if a proper lookout had been kept and proper efforts had been made to slacken the speed, the train could have been stopped in time to avoid the injury and to allow plaintiff's husband to reach the end of the trestle before being struck. There was no time or opportunity "to crawl on to or hang by his hands from the ends of the ties," or do otherwise to save himself than "run westward in an effort to get across the trestle." On account of the train "rounding the curve" in his rear, and the passing of an automobile on the public road almost directly under him, he was prevented from hearing the noise of the approaching train. By reason of the long use of the path by the general public, he was using the path as an implied licensee; and the defendant company was chargeable with notice of the use, and its employees should have anticipated the presence of licensees on the track and kept a proper lookout in order to prevent injuring any person thereon, "and especially so at a point immediately after rounding a sharp curve and approaching a trestle." The grounds of negligence alleged were: (a) failure to keep a proper lookout at the place of the catastrophe, where defendant was under duty to anticipate the presence of human beings on the tracks; (b) running at a dangerous and unusual rate of speed under circumstances as indicated; (c) failure, within the distance from where the engineer could have seen plaintiff's husband, to stop the train, it being possible by the exercise of ordinary care to have stopped a train properly equipped with approved appliances; (d) failure to blow the whistle at the blow-post before reaching the Wrightsville road crossing, as required by law; (e) striking plaintiff's husband after the employees of the defendant had discovered the perilous position in which he was, "or after same could have been discovered by the exercise of ordinary care."

*Saffold & Jordan,* for plaintiff in error.

*Williams & Bradley* and *L. B. Lightfoot,* contra.