9570.  TERRY *v.* THOMPSON & BROS. INCORPORATED.

1. "The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place, or one which is quasi permanent. It does not apply to such places as are constantly shifting and being transformed as a direct result of the servant's labor, and where the work in its progress necessarily changes the character for safety of the place in which it is performed, as it progresses."
2. A servant assumes the ordinary risks of his employment, and is bound to exercise skill and diligence to protect himself.
3. The trial court did not err in dismissing the petition on demurrer.

DECIDED MAY 17, 1918.

Action for damages; from Muscogee superior court—Judge Howard.  February 11, 1918.

*McCutchen & Bowden,* for plaintiff.
*Battle & Hollis,* for defendant.

WADE, C. J.  In the bill of exceptions error is assigned upon the judgment of the trial judge sustaining a demurrer to the plaintiff's petition in an action for the homicide of her son, alleged to have been caused by the negligence of the defendant in failing to furnish him a safe place in which to work. The allegations of the petition indicate that the homicide occurred by reason of the following facts: that the deceased, a minor, was employed by the defendant as a day laborer in the construction of a certain building, and that on April 12, 1917, the day of the injury, he and several other fellow-servants were engaged in the particular work of nailing down flooring in the building; that the defendant

had caused to be placed against certain posts or columns in the center of the building several very heavy wooden doors, in an extremely unsafe and insecure manner; that, due to the unsafe and careless position of the said doors, any jar or jolt incident to work being done near or adjacent to them would cause them to fall, and that this condition was known to the defendant, but not to the deceased; that while the deceased was intently engaged in nailing down the flooring, the jar or vibration incident to his work, as well as that of his fellow-servants in also nailing down flooring and in moving a particular ladder, caused the doors to be precipitated upon him, injuring him so badly that he died several days thereafter. Other allegations were, that the deceased was free from fault in every particular, and that his death was caused by and through the negligence of the defendant. The petition concluded by alleging the following grounds of negligence: "(1) in not furnishing her said son a safe place to work; (2) in furnishing a dangerous place and instructing her said son to work therein; (3) in placing said heavy doors against the posts or columns in such a position that said doors were dangerous and unsafe; (4) in placing said doors in such a position that they would fall on account of the jar of the working that it was necessary to do in building said warehouse; (5) in placing said doors in such a negligent and careless position that the work being conducted in said building would cause them to fall; (6) in injuring, hurting and killing her said son."

Having set forth the substantial allegations of the petition as to the circumstances under which the catastrophe occurred, we do not deem it necessary to do more than briefly state our reasons for affirming the judgment sustaining the demurrer and dismissing the petition. Clearly, much that is alleged as to the master's knowledge of the conditions existing at the time of the injury, as well as to negligence upon its part, and also as to the lack of knowledge and exercise of care upon the part of the deceased, amounts to no more than mere conclusions of the pleader, which necessarily depend upon the particular facts upon which these conclusions are based. It is a well-established principle that a demurrer admits the facts as stated in the petition, but not the legal conclusions drawn therefrom by the pleader. See *Lewis* v. *Amorous*, 3 *Ga. App.* 50, 53 (59 S. E. 338). Looking to the petition as a whole (which must be construed most strongly against the

pleader), it is plain that the existence of the danger incident to the unsafe and negligent manner in which the doors were placed -against the posts was obvious to and assumed by the servant as an ordinary risk of his employment. Unquestionably the duty rested upon the master to furnish the servant a reasonably safe place in which to work. However, this rule usually applies to a permanent place or a quasi-permanent place, and not to such a place as is constantly changing or shifting as a direct result of the servant's labor. In the case of *Holland* v. *Durham Coal &c. Co.,* 131 *Ga.* 715 (63 S. E. 290), the rule was stated as follows: "The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place, or one which is quasi permanent. It does not apply to such places as are constantly shifting and being transformed as a direct result of the servant's labor, and where the work in its progress necessarily changes the character for safety of the place in which it is performed, as it progresses." This doctrine was subsequently applied to the case of a person who was employed to cut down a tree, which fell upon and injured him. *Hagins* v. *Southern Bell Telephone Co.,* 134 *Ga.* 641 (68 S. E. 428, 137 Am. St. R. 270, 20 Ann. Cas. 248). Again it was applied where a person was engaged to make an excavation, and the soil caved in upon him. *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459 (79 S. E. 130). See also, in this connection, *Southern Ry. Co.* v. *Taylor,* 137 *Ga.* 704 (73 S. E. 1055); *Ludd* v. *Wilkins,* 118 *Ga.* 525 (45 S. E. 429); *Upchurch* v. *Culpepper,* 17 *Ga. App.* 577 (87 S. E. 834); *Robertson* v. *Merchants & Miners Transportation Co.,* 18 *Ga. App.* 568 (90 S. E. 104).

The facts in these several cases are not exactly similar to those involved in the case under review, but undoubtedly the principles of each are applicable. The facts, however, in the recent case of *Cowart* v. *Southern Marble Co.,* 144 *Ga.* 254 (87 S. E. 252), are very similar to those involved in the instant case. It appears that in that case (as in this case) the plaintiff sought a recovery upon the theory that the master failed to furnish a safe place to work. Other allegations in the *Cowart* case were, in substance, that the master was negligent in not putting proper supports under certain marble slabs to prevent them from falling over; whereas in the present case it is alleged that the master was negligent in not nail-

ing the heavy wooden doors to the upright posts against which they were temporarily placed in an inclined position, in the center of the building in which the deceased was working, so as to prevent them from falling. Also it was alleged in the *Cowart* case that the master was negligent in using, in close proximiity to said marble slabs, a powerful and heavy steam crane, the operation of which made the soft and groggy ground vibrate, thereby causing the defectively piled pieces of marble to topple over, etc.; just as in the case under consideration the plaintiff claims that the work of the deceased and his fellow servants, in nailing down flooring in close proximity to certain doors and in moving a ladder, caused the building to vibrate and jar, resulting in the precipitation of the doors upon the deceased. In the *Cowart* case the Supreme Court affirmed a judgment sustaining a general demurrer, on the ground that the danger to which the servant was subjected was obvious to him and one which under the circumstances he assumed. Here the work which the deceased was employed to perform tended directly to make the place where he was working unsafe. The dangers incident to the unsafe and negligent manner in which the doors were placed against the posts must have been obvious to the deceased as a man of ordinary intelligence, or at least as apparent to him as to the master, if not more so. Under the circumstances detailed in the petition, he necessarily knew that the resulting jar or vibration incident to any nailing in close proximity to the unsafe and insecure doors would in all probability, in obedience to the natural law of gravity, cause them to fall over and thus endanger his safety.

On this line the case of *Williams* v. *Atlantic Coast Line R. Co.,* 18 *Ga. App.* 117, 122 (89 S. E. 158), is closely analogous to this case. It was there said: "Any extensive knowledge of the laws of physics can not, of course, be expected of ordinary laborers, but the existence of those primal forces which govern the universe and control all matter, and which come necessarily under the observation of every man, whether learned or unlearned, master or servant, during the entire term of his natural existence, must be held to be within his knowledge at all times and places and under all conditions. . . Among all the great forces of nature, perhaps the dawning intelligence first makes acquaintance with gravity, for even the infant, before he is able to toddle along unaided, discovers

that an object released from his feeble grasp will fall, and may produce pain if dropped upon his tender foot or hand, and during all the years which lie between infancy and old age the influence of this universal power is daily witnessed by every reasoning person, and to some extent is often apparently noted and guarded against by animals supposed to be incapable of reason. The ordinary results to be expected from the operation of the attraction of gravity are so well understood and so universally recognized by mankind that we involuntarily dodge a falling object and avoid passing under or near heavy objects, insecurely or insufficiently supported aloft from the bosom of mother earth, and it is just as natural for one instinctively to avoid placing himself beneath or near an unattached, heavy, overhanging object as it is for the eye almost automatically to close when nearly approached by any missile or other foreign matter. The plaintiff must necessarily, therefore, have known at the time he assumed or decided to remain in the position of risk that any jar or sudden movement would almost certainly detach the unsupported and heavy metal shoe from the engine, and that gravity would then inevitably bring it with dangerous momentum to the ground; and he was in far better position at the exact time than was the master (acting through its foreman) to know where and when the shoe would probably fall when the locomotive was moved, and to estimate the danger of the place and of his position when the fall occurred, notwithstanding his allegation that he was so situated that he could not at the time see the shoe itself."

The court did not err in dismissing the petition on demurrer.

*Judgment affirmed. Jenkins and Luke, JJ., concur.*