KEITH *vs.* THE WALKER IRON AND COAL COMPANY.

A corporation building a structure composed in part of brick-work and in part of wood-work, is not responsible for the fall of the masonry upon the carpenter whereby he was killed, if due care was exercised in selecting the mason, and if there was no reason why he should not be fully trusted as an expert in his business, though his work proved defective, and the carpenter thereby lost his life ; the two workmen being co-employés of a common master and co-operating in their respective departments of labor to a common end, to wit, the erection and completion of the contemplated structure.
May 14, 1888.

Master and servant.    Fellow-servants.    Negligence. Before Judge FAIN.    Dade superior court.    September term, 1887.

Sarah S. Keith sued the Walker Iron and Coal Co. for damages for the homicide of her husband.

On the trial the following case was made by the evi-

dence for plaintiff (apart from the question of the extent of plaintiff's loss) : Colyar was general manager of the company, and was at the company's mines during only part of each day. Bogle was assistant manager and manager during Colyar's absence. O'Brien was foreman of the brick-work. Reese was head store-keeper, and gave orders about the supplies himself, and sometimes gave orders as coming from Colyar. Wilson was boss of a gang for carpenter's and other work, and Keith was employed under him. Neither Wilson nor Keith was a brick-mason. A brick arch was constructed for the defendant by O'Brien, and temporary props were left under it. After the brick-work had been finished a few hours, Reese told Wilson that Colyar wanted flooring put in under the arch, and to see O'Brien. Wilson saw O'Brien and asked him if the brick-work were finished, and if it were safe to take out the props. O'Brien said the brick-work was done and it would be perfectly safe to knock out the props. Wilson then saw Bogle, told him O'Brien was done with the brick-work and asked him if he wanted the flooring put down next. Bogle said he did, but said nothing about knocking out the props. Wilson had seen Colyar during the day and told him that he (Wilson) was going to fix some car-trucks, and after that, going to the magazine. It was at the magazine that the work in question was progressing. It was after Colyar left for the day and about five o'clock when Wilson, with Keith and another, undertook to take the props out. Wilson, being crippled, simply directed the work. The arch looked all right, but Wilson knew nothing about masonry. Wilson told Keith and the other workman what O'Brien had said, and also told them to be careful, and if they thought there was danger to stand in the door and punch the props out. This would have been quite an inconvenient and difficult way to remove them. They said the arch had a five feet rise,

and that would give them protection and there would be
no danger.   They went under the arch and commenced
knocking out the props and had about finished romoving
them when the brick-work of the arch fell in, killing
Keith.   Their manner of removing them was to first
prize them away from the wall and then knock them out
with an axe.   There was evidence that the work of re-
moving the props was carefully done, and tending to show
that the arch may have been badly constructed—that it
lacked rods binding it together, or else firmer abutments.
O'Brien was shown to have had the reputation of being
a first-class workman and to have been paid first-class
wages.   There was some evidence as to his having done
another piece of work defectively, and also as to his
having been drunk occasionally, but it was not shown
that the officers of the company knew of these things
or suspected them.   Colyar had previously told Wilson
never to send men where there was any danger or where
they did not want to go.

At the conclusion of the evidence for the plaintiff, de-
fendant moved a nonsuit, which was granted; and
plaintiff excepted.

LUMPKIN & BROCK, MCCUTCHEN & SHUMATE and GRA-
HAM & GRAHAM, for plaintiff.

W. U. & J. P. JACOWAY, by R. J. MCCAMY, for de.
fendant.

BLECKLEY, Chief Justice.

The company, a corporation, desiring to build a maga-
zine to contain its amunition for use in blasting, had in
its employment a force of carpenters and also a brick-
mason.   The mason built an arch for this structure; and
after the arch was completed, he was consulted by the

carpenters, through their foreman, to ascertain whether it was safe to remove the props that supported the arch temporarily. He pronounced it safe; and the props were removed. While they were engaged in the removal, the arch fell, and one of the carpenters was killed. The widow of the deceased carpenter brought this action to recover damages; and upon the trial, the court granted a nonsuit. The question is, whether the evidence made a *prima facie* case of negligence against the corporation, —negligence in the performance of its legal duties to the deceased carpenter. It is certain that to take the mason's opinion of the safety of the arch was the best means that the corporation had of deciding upon its safety. The mason was reputed to be of the first class, and he was paid by the corporation first-class wages. In the evidence there is no indication of negligence on the part of the corporation in selecting him. He was a proper man to entrust with the execution of the work and with the decision of its safety. The evidence shows that he made a mistake in his opinion touching its safety. The arch proved to be unsafe; but the indications are that it was simply a mistake in judgment on the part of a competent expert in the formation of his opinion. We do not see that this corporation omitted any duty to the carpenter which the law bound it to perform. It was better to take the mason's opinion than that of any other agent, officer or employé of the corporation. His opinion proved to be erroneous; but the corporation was no absolute insurer to its carpenter against accidents resulting from defective work performed by its mason. All the corporation could do was to exercise reasonable and ordinary care in the selection of a competent mason. And the persons interested, including the master-carpenter and the deceased himself, thought that it was safe to go under this arch at the

time the casualty occurred.   This action could not be
maintained on the evidence adduced by the plaintiff;
and the judgment of the court granting the nonsuit was
correct.   The head-note is a part of this opinion.

Judgment affirmed.