## CHAPMAN v. REYNOLDS.

(Circuit Court of Appeals, First Circuit.    October 22, 1896.)

### No. 182.

1. APPEAL—RECORD ON APPEAL—REQUEST TO CHARGE..

Notwithstanding an assignment of error is based upon the refusal of a request to charge, and neither the reason for refusing the request, nor any part of the general charge, is given in the record, yet, if the counsel on either side argue on its merits the requested instruction, without protest, and impliedly agree and give the court to understand that it raised a substantial issue at the trial, and was not covered by any instructions given, the court will consider such request.

2. MASTER AND SERVANT—NEGLIGENCE—INSTRUCTIONS—FELLOW SERVANTS.

In this case a new trial is granted for want of proper instructions on the question of fellow-servants. Railroad Co. v. Peterson, 16 Sup. Ct. 843, 162 U. S. 346, and Railroad Co. v. Charless, 16 Sup. Ct. 848, 162 U. S. 359, applied.

In Error to the Circuit Court of the United States for the District of Rhode Island.

This was an action by Peter Reynolds, as administrator, against Charles P. Chapman, for causing the death of plaintiff's intestate while he was at work in defendant's quarry.    Judgment for plaintiff, and defendant appeals.

Walter F. Angell (Albert B. Crafts and Stephen O. Edwards, with him on brief), for plaintiff in error.

Walter B. Vincent, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge.    This is a suit at law by an administrator of the estate of a quarryman against the owner of the quarry, for causing the death of the quarryman, and is based on a statute of Rhode Island, of which the following is the only part essential to the issues now before us:

"In all cases in which the death of any person ensues from injuries inflicted by the wrongful act of another, and in which an action for damages might have been maintained at the common law had death not ensued, the person inflicting such injury shall be liable to an action for damages for the injury caused by the death of such person, to be recovered by action on the case for the use of the husband, widow, children or next of kin, in like manner and with like effect as in the preceding five sections provided."

The alleged circumstances of the death of the quarryman are sufficiently shown by the following extract from the bill of exceptions:

"It appeared from the evidence that the accident which caused the intestate's death occurred in a quarry which was operated by the defendant.    The intestate was in the employ of the defendant, and was one of a gang of men who were engaged in operating a derrick in use in the quarry.    The derrick gang was in charge of one Splan, who was also an employé of the defendant.    The immediate cause of the accident to deceased was the fall of a portion of the rock which formed the anchorage of a Blondin, an apparatus used for raising and moving stone out of the quarry.    The Blondin consists of a cable stretched over a quarry, from which is suspended a large tub.    The tub is filled with stone, then raised by an engine, and moved along under the cable from which it is suspended

until it reaches the point desired, when it is tipped up and the stone dumped. One end of the Blondin cable was anchored in the rock about halfway up the side of the quarry. The accident occurred on Monday afternoon. The plaintiff's intestate had been away during the previous week at camp. During his absence, and about the middle of the week, there had been blasting in the vicinity of the anchorage rock, and within twenty feet of it, according to some of the witnesses, and according to others the distance was thirty to forty feet. There was no testimony that there had ever been any blasting in the vicinity of the anchorage before, within either of the distances named, although the Blondin had not been changed for a year or more. The Blondin had not been operated since the blasting until the moment of the accident. There was testimony that a blast would be likely to shake up the rock for two or three hundred feet, and that on the day of the accident the rock was quite loose twenty-five or thirty feet from the anchorage, where one of the witnesses was working, and had been much shaken up by blasting. The Blondin was in charge of one Smith, who was an employé of the defendant. The defendant's son, Charles D. Chapman, was superintendent of the works at the time of, and prior to, the accident, and had ordered the blasting of the previous week, and both Smith and Splan were under him."

It is claimed that, on account of the loosened condition of the rock where the cable was anchored, the cable gave way, and the Blondin fell on the intestate, crushing him so that he died therefrom. The verdict was for the plaintiff, and the defendant brought this writ of error. He raises a question of pleading, and he also took several exceptions to the refusals of the trial judge to grant several requests for instruction, which appear in the record. As one of those refusals requires us to send the case back for a new trial, and as all the other questions are of that character that there is no apparent necessity that any of them will ever be raised in another trial, we will not consider them. The requested instruction which we will consider, and the exception based thereon, appear in the record as follows:

"The defendant requested the court to instruct the jury that, if the accident to the plaintiff's intestate was due to the negligence of Smith in putting the Blondin into operation while the plaintiff's intestate was under or near it, the plaintiff cannot recover, because Smith and the plaintiff's intestate were fellow servants. The court refused said request, and the defendant excepted."

No part of the charge is given in the record, nor do the reasons for refusing the request anywhere appear. Non constat, so far as the record is concerned, that it was refused because fully covered by the charge, and properly so. Railway Co. v. Leak, 163 U. S. 280, 284, 16 Sup. Ct. 1020, 1021. Therefore the record of itself fails to put us in the position of the trial judge, and is altogether uncertain and conjectural. Experience shows that numerous new trials have been unjustly granted because the appellate court failed to appreciate the surroundings of the trial court under the circumstances of the rulings complained of. Therefore the federal courts insist that the record shall show specifically the grounds of any objection taken, and hold that the presumption is that the trial court correctly instructed the jury on all matters essential to the case. It is true that there are exceptional instances of plain errors which may be noticed by the appellate tribunal although the exceptions below were inartificially reserved. Wiborg v. U. S., 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197. And evidence objected to may sometimes be considered on appeal, although the objections were only generally

expressed, if in no event it could be made relevant, and if, also, the objections to it are not of a character which could have been obviated if they had been stated. Goldey v. Morning News, 156 U. S. 518, 525, 15 Sup. Ct. 559, 562. In the practical development of these principles, it was said in Andrews v. U. S., 162 U. S. 420, 424, 425, 16 Sup. Ct. 798, 799, as follows:

"Complaint is made because the court failed to give defendant's requests for instructions, but the instructions actually given by the court are not disclosed by the record, and we may presume that such instructions covered the defendant's requests so far as they stated the law correctly."

This applies literally to the case at bar, but the counsel on each side have argued on its merits the requested instruction we have quoted, without protest, and have impliedly agreed, and given us to understand, that it raised a substantial issue at the trial, and was not covered by any directions given the jury. Under these circumstances, we must consider it. The evidence to which it relates is summarized in the exceptions as follows:

"There was evidence showing that the plaintiff's intestate had his back to the Blondin gang while he was going to and working upon the out-haul block, and that Splan was watching him, and that neither of them knew that the Blondin was to be started. Smith, who was a witness for the plaintiff, swore that he was specially instructed by Charles D. Chapman, on this day, when he was about to load the tub, to load the Blondin light and keep the men from under it; but this Charles D. Chapman first says he does not recollect, and later in his testimony denies that he gave such instructions, and finally says that he does not think that he told Smith to load light. Smith had been put in charge of the Blondin, for the first time, by the superintendent, Chapman, although he had assisted in operating it before."

Whether or not Smith was instructed by Chapmen to load the Blondin lightly, and to keep the men from under it, and what men were thus referred to, were pure questions of fact, proper under the circumstances to be submitted to the jury. As for the rest, the Rhode Island statute gives no right of action unless the circumstances are such as to constitute the basis of a suit at common law. That who are fellow servants at common law is a question of general jurisprudence, as to which the federal courts are not generally controlled by the local decisions, and that the deceased and Smith were clearly such are the results of many adjudications of the supreme court, which are sufficiently referred to in Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, and Railroad Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848. Whether, also, Smith failed to comply with his instructions, if he received them, and whether such failure, if it existed, was the true cause of the injury to plaintiff's intestate, were both questions arising at common law, with reference to which the jury should have been properly instructed. For want of such instructions there must, in view of the request quoted, be a new trial. The judgment of the circuit court is reversed, and the case remanded to that court, with directions to set aside the verdict, and proceed further in the suit in any manner not inconsistent with this opinion; and the plaintiff in error will recover his costs in this court.