SUSAN INGRAM, as Administratrix, etc., of JOHNSTON INGRAM, Deceased, Respondent, *v.* ROBERT L. FOSBURGH, Appellant.

*Negligence — death from the fall of an elevator used to carry materials in a building under construction — rule of* res ipsa loquitur *not applicable — engineer and foreman are fellow-servants —failure to install safety appliances.*

In an action to recover damages resulting from the death of the plaintiff's intestate, it appeared that the defendant, a contractor, was engaged in constructing a building and that the intestate was employed by him as his superintendent and foreman; that two elevators had been installed in the building for the purpose of conveying brick and mortar to the various floors and that the elevators were constructed in such a manner that when one elevator was drawn up the other was drawn down by means of a cable fastened to the bottom of the car by a bolt and nut; that on the day of the accident, the intestate stepped upon one of the elevators for the purpose of going to the third floor, and that when the car reached the third floor and as the intestate was about to step therefrom, it fell to the ground, carrying the intestate with it and causing him to sustain injuries which resulted in his death.

The plaintiff's theory of the accident was that the nut securing the bolt, attached to the bottom of the elevator upon which the intestate stood, became loose and that the bolt pulled out, thus causing the elevator to drop to the ground. The defendant's theory was that the nut was properly fastened and that the accident occurred through the failure of the engineer to stop the engine when the descending elevator reached the bottom of the shaft, in consequence of which the bolt attached to the bottom of that elevator was stripped from the nut which fastened it, causing the car upon which the intestate was standing to drop to the ground. There was no evidence that the nut on the elevator upon which the intestste was riding was loose before the accident and the defendant's inspector testified that he tested the nut the day before the accident and found it to be tight.

It further appeared that it was against the defendant's rules for an employee to ride on the elevators, and that the intestate knew this to be the fact.

*Held,* that a judgment in favor of the plaintiff should be reversed;

That the mere happening of the accident was not sufficient to authorize a finding of negligence on the part of the defendant (per DAVY and McLENNAN, JJ.);

That the engineer who operated the engine which controlled the elevators was a co-servant of the intestate, and that, if the accident resulted through his negligence, the plaintiff could not recover (per DAVY and McLENNAN, JJ.);

That, as the elevators were not designed for passenger service, the omission of the defendant to install safety appliances thereon did not establish negligence on his part. (Per DAVY and McLENNAN, JJ.)

APPEAL by the defendant, Robert L. Fosburgh, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 3d day of April, 1901, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the the 3d day of April, 1901, denying the defendant's motion for a new trial made upon the minutes.

*S. M. Lindsley,* for the appellant.

*J. W. Rayhill,* for the respondent.

DAVY, J.:

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the defendant's negligence. The case was tried before a jury at a Trial Term of the Supreme Court held in Oneida county in March, 1901, and resulted in a verdict in plaintiff's favor for $5,000.

It appears that on the 9th day of December, 1899, the defendant was engaged as a contractor in constructing a brick building in the city of Utica, N. Y., and plaintiff's intestate was in defendant's employ as superintendent and foreman, in charge of the bricklayers and other employees of the defendant.

The accident occurred on the morning of the 9th of December, 1899, while the intestate was riding in one of the freight elevator cars operated by steam power, and used for carrying brick and mortar to the third story of said building. When the car reached the floor of the third story, and as he was about to step from the platform of the car, it fell to the ground carrying the deceased with it, seriously injuring him and from the effects of which he died on the 15th day of December, 1899.

There were two elevators operated by an engine, which turned two drums that wound the wire cables fastened to the floors of the elevators. By winding up one drum, the cable connected with the bottom of the car was pulled down and the other elevator or car was pulled up. In other words, when one car was pulled up, the other car at the same time was pulled down. The cable was fastened to the bottom of the car through the eye of a bolt which went up through the platform of the car, and was fastened to the car by a nut screwed down tight to the platform. The plaintiff's conten-

tion is, that this nut became loose and unscrewed and that the bolt pulled out, which caused the elevator upon which the deceased stood to drop to the ground.

The defendant claims that the bolt and nut were in good condition, that the nut was screwed down tight to the washer, and that the accident occurred through the negligence of the engineer, who carelessly operated the engine; that when the opposite car reached the foot of the elevator shaft, instead of shutting off the power, the engineer kept on pulling the cable until the bolt was stripped from the nut and platform of the car, which caused it to ascend and the car that the deceased was in to drop to the ground.

We are of the opinion that the accident occurred in the manner indicated by the defendant, but, assuming that the plaintiff's theory is the correct one, we do not see how a recovery can be had upon the evidence presented at the trial.

The purpose for which this elevator was constructed and operated was to lift brick and mortar to the different floors for the men who were engaged in laying the walls of the building. The elevators were not constructed or used for the purpose of carrying passengers. They were the ordinary builders' elevators, consisting of platforms without any sides, very generally in use by those engaged in erecting brick buildings, and were constructed under the direction and supervision of a competent and experienced mechanic. One gang of men at the base rolled wheelbarrows loaded with brick and mortar onto the platform of the car and it was pulled up, and another gang of men at the top of the building took the loaded wheelbarrows from the car.

When the elevators were first operated the cars were only run to the top of the first story. The morning before the accident the elevators were raised so that the cars would run to the third floor. After the work of raising them was finished, Mr. Redding, the car inspector and repairer, inspected the cars and bolts and discovered no defects. One of the employees went under the car and held the eye of the bolt with an iron bar while the inspector tested the nut and found it so tight that it would not move. The nut which was screwed onto the bolt on top of the platform of the car was exposed to plain view. The elevator had been run and used in this way and no accident had ever occurred previous to this one. It had never,

# 132        INGRAM *v.* FOSBURGH.

so far as the evidence disclosed, failed to answer the purpose for which it was constructed.

There was nothing to indicate before the accident that the bolt or nut had been injured by use or that for any reason the elevator was less safe or efficient than it was when it was first operated. It is urged that the nut must have become loose and worked off, which was the cause of the accident; but that is merely a surmise. There is no evidence that the nut was loose before the accident.

There was no occasion for the deceased or the other employees to ride on the elevators, as ladders were provided to enable them to go up and down in the building.

The deceased knew that it was against the rules to ride on the elevators. He had been told by the defendant that the employees must not ride on them as it was dangerous.

The plaintiff contends that this rule was not lived up to by the employees and that sometimes they would ride rather than use the ladders. Nearly all of the men who rode upon these elevators testified that they knew it was against the rules, but that they took the chances and rode at their own risk. After the accident the deceased admitted that the defendant had cautioned him against riding on the elevators or allowing any of the employees to ride and that he had no one but himself to blame for the accident.

It is apparent, we think, upon the facts presented, that the deceased had as clear and intelligent a comprehension of the dangers to which he was exposed by riding on this elevator as the defendant had. It was no part of his duty to ride on the elevator; it was his own voluntary act with full knowledge of the dangers involved. He must, therefore, be deemed to have assumed the risk and to have waived any claim for damages against the defendant. (*Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 274; *Crown* v. *Orr*, 140 id. 453; *Knisley* v. *Pratt*, 148 id. 372.) If the accident occurred through the negligence of the engineer, it was the negligence of a coservant done within the range of his employment and the plaintiff cannot recover upon that ground. One who engages in work with others takes the chances of the negligence of his coservants.

This elevator, in view of the purpose for which it was used, could not reasonably be supposed to put human life in danger from fall-

ing, and it was not negligent to omit appliances necessary for carrying passengers. The omission of safety appliances on such an elevator, upon which the servants were warned not to ride, does not establish negligence on the part of the master. It is not claimed but that the elevator was adequate for the purpose for which it was used, and was not only reasonably safe for the servants who operated it, but no prudent person could have anticipated any danger to the workmen.

The defendant had a right to use any elevators or machinery that he might choose to select, provided he exercised reasonable care and prudence in having them safe and suitable. He was not bound to use the most approved machinery and appliances in that business.

No one testified that he had ever heard any person complain before this accident that the elevator was unsafe for the purpose that it was intended to be used. It could hardly be expected that the defendant could have seen a danger that was not visible to any one, not even to those who inspected the elevator daily or to those whose lives were most exposed in operating it.

The mere fact that this accident occurred in the manner testified to by plaintiff's witnesses was not sufficient to authorize an inference of negligence on the part of the defendant. It is for the plaintiff to show how the accident occurred and to prove that it was caused by the negligence of the defendant. Chief Judge RUGER in *Dobbins* v. *Brown* (119 N. Y. 192) says: "The degree of care required of an employer in protecting his employes from injury has been stated to be the adoption of all reasonable means and precautions to provide for the safety of his servants while in the performance of their work. * * * The omission to use such care has been held to be negligence, rendering the employer liable for damages occasioned by it; but such neglect must be proved, either by direct evidence or the proof of facts from which the inference of negligence can be legitimately drawn by the jury. It cannot be supported by mere conjecture or surmise, but must be made referable by the proof to some specific cause or defect. It has been held that the mere fact that an accident occurred which caused an injury, is not generally, of itself, sufficient to authorize an inference of negligence against a defendant."

We think there was no evidence upon which the jury could prop-

erly find that the defendant was guilty of any negligence in furnishing the elevator or its equipment, or in providing for its proper inspection from time to time as was necessary, in order to guard against accidents. (*Stringham* v. *Hilton*, 111 N. Y. 188; *Hart* v. *Naumburg*, 123 id. 641.) The motion for a nonsuit, therefore, should have been granted.

The judgment and order appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

McLENNAN, J., concurred; SPRING, WILLIAMS and HISCOCK, JJ., concurred in result by reason of errors presented by the exceptions, other than those discussed in the opinion.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide the event, upon questions of law only, the facts having been examined and no error found therein.