## BYRD *v.* THOMPSON.

1. A laborer employed to assist in placing joists on the walls of a brick building recently constructed by brick masons to the second story is a fellow servant with such masons about the same business.

2. Where, while he was engaged in placing one end of a joist on the wall, a loose brick therein turned under the laborer's foot, causing him to fall and be injured, the master is not liable on account of the negligence of the mason in not properly placing and securing the brick in the wall (it not appearing that the master knew of the incompetence of the brick mason when he was employed), or because the master failed to warn the laborer of such defect.

3. A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself.

4. "The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place, or one which is quasi permanent." "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow servants."

5. Under the evidence the court properly directed a verdict for the defendant.

DECEMBER 14, 1916.

Action for damages. Before Judge Bell. Fulton superior court. January 1, 1916.

Brad Byrd brought suit against J. B. Thompson, to recover damages on account of personal injuries received while working for Thompson as a laborer on a building which Thompson was erecting. After the evidence was in, the court directed a verdict for the defendant.

The petition alleged in substance as follows: Thompson, as owner and builder, was engaged in erecting a building in the city of Atlanta, and Byrd was instructed by Thompson to assist another

workman in putting in "sleepers" in the building on the second story. The sleepers extended across the building, and the ends thereof rested on the outer walls of the building. Byrd was a "lather" by trade, and he had been employed to do the lathing work on the building, which was not then ready for the lathing. He was not experienced as a carpenter or in putting in sleepers, and the defendant knew at the time that he was a lather. In obedience to the instruction of his employer, the plaintiff, being at one end of the sleeper on the outer wall where it was to be set, put his foot on the wall (there being no other place for him to put it, and it being necessary in the line of his duty to do so), and the bricks of the wall slipped and threw him from the second story down fifteen or twenty feet to the bottom of the building, and he was injured by the fall. He had no notice or warning that the bricks had not been put securely in the wall and were loose, and that it was dangerous to step thereon. The defendant negligently failed to give the plaintiff warning that the bricks in the wall were loose and not securely fastened and laid in cement or other substance to hold them in position, and negligently failed to provide for him a safe place to perform the work required of him. The plaintiff had no part in building the wall, and was wholly without fault, etc. The defendant denied the material allegations of the petition. On the conclusion of the evidence the court directed a verdict for the defendant. A motion for new trial was overruled, and the plaintiff excepted.

C. D. Maddox, for plaintiff. J. L. Anderson, for defendant.

HILL, J. (After stating the foregoing facts.) The motion for new trial complains that the court directed a verdict for the defendant, instead of submitting the case to the jury. The main question in the case is whether, under the pleadings and the evidence, the fellow-servant doctrine applies. Section 3129 of the Civil Code provides: "Except in the case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business." The question therefore arises, were Byrd and the bricklayers "about the same business," and were they fellow servants at the time of the injury? The bricklayers were not engaged in erection of the wall at the exact time the injury occurred. The evidence tends to show a suspension of the work on the wall, which had been

completed to the second story. But, in the view we take of the case, it does not matter whether or not the bricklayers were actually engaged in laying the brick at the time the accident occurred. They and the plaintiff were fellow servants engaged in the same business of building the house; and unless the master was negligent in the selection of the other servant, or the master had knowledge (and the servant had not) of the defects in the wall and failed to disclose them to the plaintiff, he would not be liable for the injury. There is no evidence to show that the master was negligent in these respects. "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself." Civil Code, § 3131. The plaintiff testified, among other things: "I went there to go to lathing. I went to helping put up these timbers. The lathing was not ready, and he hired me to work in the building until the lathing was ready. . . That was a brick wall—supposed to be fixed all right. It was just built there and cemented up and mortar put on; brick laid in cement with mortar, like any other brick wall. . . That brick looked like a part of the wall. I suppose I did not notice any break at all, any more than just a straight wall. I didn't notice any brick sticking out at all; supposed [to] be straight, so far as I saw. I wasn't paying attention to anything like that nohow. I was paying attention to my work. I wasn't thinking about no loose brick. I didn't have no thought of it until it slipped out from under my foot. . . Mr. Thompson did not tell me before I got the fall that the brick was loose; he never told me anything about it; nobody told me the brick was loose. . . I have been accustomed to climbing upon houses that were not finished. I helped to build a good many of them. I had worked on brick walls before, many a time. I had laid joists down this way before. I understood pretty well how to do that. . . I don't remember exactly how thick this wall was. It had been there, I suppose, may be a week or more. They were building on it when I first went up there. . . I saw them working on this wall when I was trading about this work. I don't know exactly how long it was completed when I went there, but I know it was not long. The mortar will set and get hard in less time than a week or ten days, if there is nothing on the outside of the brick. . . I didn't pay any particular attention to this wall at all. I took it for granted

that it was all right. I didn't notice if there was any loose brick. I thought it was all right and went on and did this work." This evidence does not show that the plaintiff exercised the proper diligence to protect himself. Nor does the evidence in the record show that the master knew or ought to have known of the incompetency of the bricklayers who laid the brick in the wall, or the danger in the wall. It is insisted that the fellow-servant doctrine does not apply here, for the reason that plaintiff was not injured by the negligence of a fellow servant, the person who built the wall having gone away at the time of the injury, and that his work was prior to the employment of the plaintiff. We will consider this contention.

In *Keith* v. *Walker Iron & Coal Co.*, 81 *Ga.* 49 (7 S. E. 166, 12 Am. St. R. 296), it was held: "A corporation building a structure composed in part of brick-work and in part of wood-work is not responsible for the fall of the masonry upon the carpenter, whereby he was killed, if due care was exercised in selecting the mason, and if there was no reason why he should not be fully trusted as an expert in his business, though his work proved defective, and the carpenter thereby lost his life; the two workmen being coemployees of a common master and co-operating in their respective departments of labor to a common end, to wit, the erection and completion of the contemplated structure." See also *Georgia Coal & Iron Co.* v. *Bradford*, 131 *Ga.* 289 (62 S. E. 193, 127 Am. St. R. 228). In 4 Labatt's Master & Servant (2d ed.), § 1423, p. 4092, appear the following notes and citations in support of them: "A painter upon a new house, who uses a scaffold erected by carpenters in building the house, is a fellow servant of the carpenters. Hoar *v.* Merritt (1886), 62 Mich. 386, 29 N. W. 15 (carpenters here not independent contractors; all employed in a common pursuit in carrying out a common enterprise). A servant in charge of a derrick and a servant posted on a building are fellow servants. Fox *v.* Sandford (1856), 4 Sneed, 36, 67 Am. Dec. 587 (plaintiff struck by timbers hoisted by the derrick, and thrown to the ground)." "Pole-setters are fellow servants of a lineman injured by the fall of a pole which they negligently set. Mullin *v.* Genesee County Electric Light, Power and Gas Co. (1911), 202 N. Y. 275, 95 N. E. 689. One placed in charge of an apparatus for raising and moving stone out of a quarry is a fellow servant with a quarryman in the

quarry. Chapman *v.* Reynolds (1896), 23 C. C. A. 166, 33 U. S. App. 686, 76 Fed. 274. A carpenter engaged in inclosing an elevator shaft within a frame is a coservant of an employee who is operating the elevator. Mann *v.* Sullivan (1899), 126 Cal. 61, 77 Am. St. Rep. 149, 58 Pac. 375. The elevator man in a department store is fellow servant of an employee in a dressmaking department. Carnahan *v.* Robert Simpson Co. (1901), 32 Ont. Rep. 328. The operator of an elevator in a building in the process of construction is the fellow servant of a workman on the building. Ingraham *v.* Fosburgh (1902), 73 App. Div. 129, 76 N. Y. Supp. 344. A servant working inside a brewery is a coservant of one whose duty it is to unload barrels outside from the barges which bring them to the brewery. Charles *v.* Taylor (1878), L. R. 3 C. P. Div. 492, 38 L. T. N. S. 773, 27 Week. Rep. 32 (the latter servant had gone into the brewery and was injured by the former, who was shifting a barrel)."

From the foregoing authorities as applied to the evidence in this case, we conclude that the plaintiff who was assisting in putting down the joists and the bricklayers who built the wall were fellow servants within the meaning of the law. And nothing appearing in the record showing that the master knew or ought to have known that the bricklayers were incompetent, or that he had knowledge of the defects in the wall and failed to disclose them to the plaintiff before he was injured; and it appearing from the evidence of the plaintiff that he was "not paying attention to anything like" the wall, the court did not err in directing a verdict for the defendant.

It was alleged in the petition that the master failed to provide a safe place for the plaintiff to perform the work required of him, and it is argued that it was the duty of the master to furnish the servant (the plaintiff) with a reasonably safe place to work. "The general rule of law declaring the duty of a master in regard to furnishing a servant a safe place to work is usually applied to a permanent place, or one which is quasi permanent." *Holland* v. *Durham Coal &c. Co.,* 131 *Ga.* 715 (63 S. E. 290). "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due

performance of that work by them and their fellow servants."
Armour v. Hahn, 111 U. S. 313 (4 Sup. Ct. 433, 28 L. ed. 440).
The plaintiff was a man of full age, with some experience in the
character of work in which he was engaged at the time of the
injury; and if the wall was insecure at that time, the injury was
due either to the risk incident to the unfinished state of the work
on the building, or to some negligence on the part of the brick-
layers who were fellow servants, all of whom were in the employ-
ment of the same master and engaged in the same common pur-
pose of constructing the building. In neither of which events can
the servant recover.

                    *Judgment affirmed.    All the Justices concur.*