*Beck & Beck,* for plaintiff in error.  *S. B. Wallace,* contra.

-----

### 14720.  TUFTS, executrix, *v.* THRELKELD.

1. When the record shows a valid return of service, and it is necessary to resort to extrinsic testimony to show that there has been no service, or that the service was for any reason invalid, the objection can be made only by plea in abatement (if before judgment), and in connection therewith the sheriff's return must be duly traversed.  A plea to the jurisdiction, on the ground that the defendant was not a resident of the county in which the suit was filed, cannot be maintained without a traverse of the entry of service, where it appears therefrom directly or by necessary implication that the suit was filed and served in the county of the defendant's residence; and the sheriff and his deputy who made the entry are necessary parties to the traverse.  *Bell v. New Orleans & Northeastern R. Co.,* 2 Ga. App. 812 (2), 816 (59 S. E. 102).

2. Where, upon a suit for personal injuries, a true entry of personal service is made as to the defendant tort-feasor, who thereafter dies, the action does not thereby abate, and the personal representative of the deceased tort-feasor, after the lapse of the 12 months' exemption from suit, may be properly made a party defendant in his stead.  A plea to the jurisdiction, thereafter filed by such personal representative on the ground that the tort-feasor was not a resident of the county in which the suit was filed, may be disregarded in the absence of a traverse of the entry of service, to which the sheriff and his deputy, if a deputy made the entry, are made parties.  The untraversed entry of service must be taken as true, and such a suit is a valid pending suit against the personal representative so long as it stands.

3. The plaintiff's cause of action having been saved from abatement by the deatn of the tort-feasor, and the right to maintain it having become fixed when the personal representative of the original defendant was made a party, the right of action did not abate because of the deatn of the tort-feasor, when it was subsequently dismissed. The plaintiff had a right to renew it at any time within the statute of limitations, as in other instances, on the payment of costs, as provided in the Civil Code, § 5625. *Sewell* v. *Atkinson*, 14 *Ga. App.* 386 (1) (80 S. E. 862).

4. If a danger is obvious and as easily known to the servant as to the master, the latter will not be liable for a failure to warn, but if there are latent defects incident to an employment, unknown to a servant, of which the master knows or ought to know, he is bound to give to the servant warning in respect thereto.

5. In a suit by a servant against the master, the petition should plainly and distinctly set forth the elements necessary to a recovery. Legal results arising from the facts alleged may be pleaded in general terms or in the form of a legal conclusion. A petition so drawn is good against demurrer. *Southern States Portland Cement Co.* v. *Helms*, 2 *Ga. App.* 308 (1) (58 S. E. 524). A conclusion in a pleading will not be subject to special demurrer if the inference stated therein may be legitimately drawn from the special facts pleaded.

6. The petition was not subject either to the general or the special demurrer interposed.

DECIDED DECEMBER 10, 1923.

Action for damages; from DeKalb superior court—Judge Hutcheson. May 9, 1923.

On January 28, 1920, Farris Threlkeld filed an action, by next friend, against Arthur Tufts, for personal injuries alleged to have been caused by the negligence of the defendant on the 15th day of the same month. A deputy sheriff of Fulton county made an entry of personal service upon the defendant on the next day after the suit was filed. The defendant died on February 23, 1920. His death was suggested of record on March 1, 1920, and on March 18, 1922, upon a rule nisi issued to his executrix, Mrs. Janie W. Tufts, who acknowledged service of the rule, an order was passed making her a party defendant, but allowing her until the first Monday in May to file such defense as she might desire. On April 29, 1922, she filed a special plea to the jurisdiction, alleging that the original defendant, at the time of the filing of the suit, was not a resident of Fulton county, as the petition alleged, but of the county of DeKalb, that she herself was at all such times a resident of the county of DeKalb, and that the city court of Atlanta, in Fulton county, was without jurisdiction to entertain

the suit. On May 26, 1922, before this plea had been disposed of, the plaintiff voluntarily dismissed his action. There was never any traverse to the entry or return of service on the tort-feasor, Arthur Tufts. On May 29, 1922, the plaintiff brought a second action, called a renewal of the first, in the superior court of DeKalb county, against Mrs. Tufts, as executrix. A copy of the first suit, and all orders and proceedings incident thereto, were set forth as exhibits to the second suit. The averments of each in respect to the transaction by reason of which the plaintiff claims damages were substantially as follows: That the defendant Arthur Tufts was an independent contractor, erecting a three-story building in the city of Atlanta; that the plaintiff, Farris Threlkeld, a minor 16 years of age was employed by him on January 20, 1920, as a helper in the construction of the building; that on the third day thereafter the plaintiff was assigned by his employer to work upon the second floor, to see that the elevator which carried concrete thereto was properly emptied; that on this day, at about 12:25 p. m., the plaintiff was walking across the ground floor toward a column, for the purpose of climbing to the second floor to the work assigned to him, the column being provided .with a chain ladder for purpose; that the ground floor had been laid before the plaintiff was employed, and in it was a large square opening, 6 x 6 feet, which had been left as an elevator shaft, or shaft into which steps were to be built. This shaft had been covered over with paper, upon which dirt and water had fallen until it looked like a part of the floor. The plaintiff was not advised by any one of the presence of this opening, and in the exercise of ordinary care could not have discerned its existence; he had been working on the building only three days, was not there when the ground floor was constructed, did not know how it was constructed, and had not been warned of any pitfalls thereon; that on the day of his injury, as he was walking across this floor toward the column referred to above for the purpose of continuing his work on the second floor, he stepped on the flimsy paper which covered the shaft and fell through the same to the basement floor beneath, a distance of some 15 feet, suffering certain injuries which he describes and which are alleged to be permanent.

It is alleged that the defendant was negligent in that he placed in the ground or first floor "a pitfall" as described above, "which

was dangerous in its character, and covered same over with paper, causing it to look like the surrounding floor, and negligently failed to advise petitioner of its presence;" that the defendant was further negligent "in that he failed to provide a reasonably safe place for petitioner to perform his work, and.it is here alleged that said place was not a reasonably safe place, because of the pitfall he had caused to be placed therein, without notice to petitioner; and it is here shown that petitioner did not have equal means with the master of knowing or of ascertaining that said pitfall was there or that the place at which he worked and was injured was not a reasonably safe place for him to work and perform his duties." Damages were claimed in the sum of $25,000.

The defendant interposed a general demurrer, and also a special demurrer to the. language of paragraph 16, which is shown in the last quotation above, upon the ground that it does not affirmatively allege any facts showing why the plaintiff did not have equal means with the defendant of knowing of the conditions which resulted in his injuries, and that this averment is a mere conclusion of the pleader. The demurrers were overruled and the defendant excepted.

*Westmoreland & Smith,* for plaintiff in error.

*Arminius Wright,* contra.

BELL, J. (After stating the foregoing facts.)

We cannot agree with the position taken by the plaintiff in error that there was never a valid pending suit in the city court of Atlanta. An action was pending there at the death of the tort-feasor, with an entry of service regular upon its face. This entry was never traversed, and implied that the defendant was a resident of the county of Fulton, as the petition had alleged. It was proper thereafter in due season to make the executrix of the tort-feasor a party defendant in his stead. Her plea to the jurisdiction, on the ground of her non-residence and that of the tort-feasor, would have been properly disregarded in the absence of a traverse of. the entry. The necessity of such a traverse in connection with a plea to the jurisdiction like that here involved has been recently discussed by this court in *Williams* v. *Atlanta National Bank,* 31 *Ga. App.* 212 (120 S. E. 658). Under the ruling then announced, it is the opinion of the court that the plea to the jurisdiction now under consideration amounted to nothing. Thus the action was

a subsisting and pending suit, unaffected by the death of the tort-feasor, until it was voluntarily dismissed by the plaintiff on May 26, 1922.

The question next arising is whether such voluntary dismissal subjected the plaintiff's case to abatement on account of the previous death of the tort-feasor? Shall the renewal of the action be treated as an original suit and the plaintiff be dealt with as if no action had been pending at the time of the death of the tort-feasor? Did the plaintiff, by dismissing his first suit, lose the advantage of its pendency, which would have prevented an abatement with the death of the wrongdoer? The plaintiff's cause of action would have abated at common law, but this rule has been modified in this State by legislative enactments, contained now in the Civil Code (1910), § 4421, which section provides as follows: "No action for a tort shall abate by the death of either party, where the wrong-doer received any benefit from the tort complained of; nor shall any action for the recovery of damages for homicide, injury to person, or injury to property abate by the death of either party; but such cause of action, in case of the death of the plaintiff, shall, in the event there is no right of survivorship in any other person, survive to the personal representative of the deceased plaintiff, and in case of the death of the defendant shall survive against said defendant's personal representative." It has been repeatedly held by the Supreme Court and this court that this section is applicable only to actions pending at the time of the death of the defendant. See *Callaway* v. *Livingston*, 28 *Ga. App.* 453 (111 S. E. 742), and cases cited. Was the second suit a continuation of that action? A similar question was decided by this court (though by a divided bench) in *Sewell* v. *Atkinson*, supra, in which Judge Russell, speaking for the majority, said: "At common law a cause of action for a personal tort abated with the death of the person in whom the right of action was vested. The General Assembly, in varying the rule of the common law, evidently intended to prevent the abatement of actions for personal injuries, pending at the time of the death of either party, and expressly declared that in case of the death of a plaintiff in such an action the 'cause of action' shall survive to the personal representative of the deceased plaintiff, if there is no right of survivorship in any other person. Civil Code, § 4421. This rule in derogation of the

common law must of course be construed strictly, but the intention of the legislature must nevertheless be given effect, and it must be presumed that the use by the General Assembly of the term 'cause of action,' in the exception as to pending actions, was not unintentional or ill-advised." In that case the action was against the receiver of a railroad company, for damages on account of the homicide of the plaintiff's son. The plaintiff died a few months thereafter, and her administrator was subsequently made a party plaintiff in her stead. Later the plaintiff administrator dismissed the action, to a renewal of which the defendant demurred upon the ground that any rights which the plaintiff had as administrator in connection with the suit formerly brought by the plaintiff's intestate terminated when the plaintiff voluntarily dismissed the previous action. This court affirmed the overruling of the demurrer.

While the language employed in that case in reference to the meaning of the phrase "cause of action" as contained in section 4421 of the Civil Code is apparently in conflict with an expression by the Supreme Court in *Frazier* v. *Georgia R. &c. Co.,* 101 *Ga.* 77 (28 S. E. 662), wherein it was said: "The words 'cause of action . . shall . . survive to the personal representative of the deceased plaintiff,' construed in the light of the title of the act and of the phraseology of the act itself, mean, in our opinion, that the *action,* rather than the *cause of action* shall survive," we think the conflict is merely apparent and not real, and that the correct result was reached in the *Sewell* case. Judge Russell was holding that where the action has once been properly instituted, the cause of action will not thereafter abate by the death of either party if a new party plaintiff or defendant is made, though the suit is subsequently dismissed; while the language of the Supreme Court in the *Frazier* case was merely to the effect that the cause of action could not survive unless a suit had been filed before the death of the tort-feasor. Thus there is no inconsistency between the two decisions.

When the plaintiff in the case now before us had succeeded in filing the former suit and procuring its service upon the defendant before his death, the danger of abatement by the death of the tort feasor was passed, provided a new party defendant was properly made. When thereafter the defendant's executrix was made a

party in his stead, the right to continue the action (assuming a cause of action was alleged) became fixed. If the plaintiff had been nonsuited, we see no reason why the action might not thereafter have been renewed as in other instances. Similarly, the suit could be voluntarily dismissed with the right of renewal at any time within the statute of limitations. "Unless the bar of the statute of limitations would attach but for the renewal of the suit within six months, and until the action is barred by the statute of limitations, it is within the power of a plaintiff, at his own option, to dismiss his suit and recommence it as often as he chooses, subject only to liability for the cost in case he desires to renew the action." *Poplarville Sawmill Co.* v. *Driver,* 17 *Ga. App.* 674 (1) (88 S. E. 36). The pendency of the suit at the time of the death of the defendant, with proper service, and the making of the defendant's personal representative a party in his stead, kept the action alive. Its subsequent dismissal was then unaffected by the death of the tort-feasor. To hold that the action could not be renewed would be the same thing as saying that it abated not because of the death of the original defendant but because of its dismissal; and a voluntary dismissal will not ordinarily abate or destroy the cause of action.

Though the plaintiff has made certain averments appropriate to an action recommenced under section 4381 of the Civil Code, within six months after a prior dismissal, thus possibly indicating his belief that the renewed action would otherwise have been barred, we think this section is in no wise applicable and that such averments may be treated as surplusage. The right of action would not have been barred by the statute of limitations until the lapse of two years from the plaintiff's majority. Under this section the second suit need not be identical in form with the first, nor the same as to parties, though it must be for substantially the same cause of action. *Cox* v. *Strickland,* 120 *Ga.* 104 (5, 6) (47 S. E. 912, 1 Ann. Cas. 870). At common law a second action to be identical with the first must, besides possessing other requisites, be brought in the same court, but this rule does not prevail in this State. See *Cox* v. *Strickland,* supra. Thus we are not concerned with the question as to whether a renewal of a suit under section 4381 is to be considered identical with the first, nor are we to be governed by the rule prevailing at common law in determining the

identity of the two actions. The present action was not renewed under section 4381, but under section 5625. In this section it is required that on dismissal of the plaintiff's case, he may recommence it on the payment of costs. If the plaintiff had not paid the costs of the first suit before commencing the second, and if a plea in abatement had been filed on that ground, it would undoubtedly have been held that the second action was abatable for the failure to pay the costs, on the idea that the suits were identical. *Doody Co.* v. *Jeffcoat,* 127 *Ga.* 301 (1) (56 S. E. 421); *Moore* v. *Bower,* 6 *Ga. App.* 450 (4) (65 S. E. 328); *Holmes* v. *Huguley,* 136 *Ga.* 758 (1) (72 S. E. 38). The cause of action and the parties were the same, the executrix being considered the same as the original defendant. *Moody* v. *Threlkeld,* 13 *Ga.* 55 (5).

It would seem that if the parties are the same and the cause of action the same, the two cases are identical though they were brought in different courts, except perhaps when one was in the State and the other in the Federal court, or vice versa. See *Perry* v. *Constitution Pub. Co.,* 17 *Ga. App.* 80 (4) (86 S. E. 93). If the renewal action could have been held subject to a plea in abatement for nonpayment of costs in the prior suit if the plaintiff had failed to pay the same, on the ground that the actions were identical, we think that the second must also be treated as a mere continuation of the first, for the purpose of determining the question of abatement on account of the death of the tort-feasor. The second action was not a new and distinct suit, but actually a renewal of the first one.

In our opinion the court did not err in overruling the demurrer on the ground that the plaintiff's cause of action had abated. No question as to the jurisdiction of the superior court of DeKalb county where the second suit was filed has been raised. The petition alleges that this was the county of the residence of the executrix, as did she in her plea to the jurisdiction to the first suit. She was suable in the county of her own residence without regard to the residence of the decedent whose estate she represented. *Long* v. *Stanford,* 135 *Ga.* 823 (70 S. E. 645); *Lively* v. *Ward,* 23 *Ga. App.* 805, 807 (99 S. E. 632).

We come now to the question whether or not the averments of the suit would show an original cause of action. It is true that a servant over 14 years of age is presumptively chargeable with

the same degree of diligence for his own safety as an adult engaged in the same work. *Muscogee Mfg. Co.* v. *Butts,* 21 *Ga. App.* 558 (1) (94 S. E. 821) ; Civil Code (1910), § 3474; *Central R. Co.* v. *Phillips,* 91 *Ga.* 526 (2) (17 S. E. 952) ; *Evans* v. *Josephine Mills,* 119 *Ga.* 448 (6) (46 S. E. 674) ; *Texas Co.* v. *Hearn,* 23 *Ga. App.* 408 (1) (98 S. E. 419). It is true also that if a danger is obvious and as easily known to the servant as to the master, the latter will not be liable for a failure to warn. *Crown Colton Mills* v. *McNally,* 123 *Ga.* 35 (3) (51 S. E. 13) ; *Ludd* v. *Wilkins,* 118 *Ga.* 525 (45 S. E. 429) ; *Hamby* v. *Union Paper Mills Co.,* 110 *Ga.* 1 (35 S. E. 297) ; *Stubbs* v. *Atlanta Oil Mills,* 92 *Ga.* 495 (17 S. E. 746) ; *Cartledge* v. *Pierpont Mfg. Co.,* 120 *Ga.* 221 (47 S. E. 586) ; *Hoyle* v. *Excelsior Laundry Co.,* 95 *Ga.* 34 (21 S. E. 1001) ; *White* v. *Kennon,* 83 *Ga.* 343 (9 S. E. 1082). But if there are latent defects incident to an employment, unknown to a servant, of which the master knows or ought to know, he is bound to give the servant warning in respect thereto. Civil Code (1910), § 3130. In the absence of anything to suggest that the place where he is working is dangerous, the servant has the right to rely upon the performance by the master of the duty to furnish him a reasonably safe place and to properly inspect it and preserve such safety. *City of Atlanta* v. *Trussell,* 21 *Ga. App.* 340 (3) (94 S. E. 649) ; *International Cotton Mills* v. *Carroll,* 22 *Ga. App.* 26 (1) (95 S. E. 472). The plaintiff alleges that he had been working for the defendant only three days, and that the shaft or hole in the ground floor had been covered over with paper upon which dirt and water had fallen until it looked like a part of the floor. In paragraph 16 of the petition it is alleged that the defendant was negligent, in that he "covered same over with paper" causing it to look like the surrounding floor, and negligently failed to advise petitioner of its presence. We think these averments sufficiently alleged a latent danger of which, taking the averments to be true as must be done upon demurrer, the plaintiff was entitled to be warned. It does not appear that the dangers were obvious and as easily known to the servant as to the master. It cannot be held as a matter of law from the plaintiff's allegations that he was not at the time engaged in the service of his master and within the scope of his employment. He says he was going across the first or ground floor to the column for the purpose of

ascending upon a chain ladder to the second floor where he worked, the ladder being designed for that use. He was upon the premises of his master and apparently engaged in doing what he was expected to do. He had to get to the second floor somehow, and he had to come upon the premises to do so. It does not appear that he was out of the path of duty, nor is the rule here pertinent, as laid down in *Byrd* v. *Thompson,* 146 *Ga.* 300 (4) (91 S. E. 100), and in a number of other decisions by the Supreme Court and by this court, that the law declaring the duty of a master in regard to furnishing a servant a safe place to work is not ordinarily to be applied where the place is constantly changing by reason of the very work which the servant is employed to perform. According to the petition the first floor had been constructed. The plaintiff was not engaged in the construction of the shaft, nor in doing any work that in its progress changed the character for safety of the place in which his work was performed as the work progressed. In so far as the shaft was concerned, the risk was not one which he assumed in his employment. "The general rule in regard to the duty of the master to furnish a safe place to work is not rendered inapplicable merely because the servant was engaged in construction work, and that at the time of the injury the object being constructed was in an unfinished state, to some extent changing from day to day. If it were otherwise, it would be difficult to find a case where a workman was engaged in performing labor for a master where the rule would apply. Practically all labor normally tends to change the condition of the thing labored upon; otherwise it would be useless." *Terry Shipbuilding Corp.* v. *Griffian,* 153 *Ga.* 390, 394 (112 S. E. 374). We think the decision of the Supreme Court in the case just cited would be applicable to the facts now before us, and that the allegations of the petition bring the case within the general rule regarding the duty of the master in furnishing the servant a safe place to work.

This case is unlike that of *Naylor* v. *Chickamauga Quarry &c. Co.,* 19 *Ga. App.* 714 (91 S. E. 1063), in which the plaintiff was injured by stepping "upon a forty-penny nail sticking through a piece of board lying with its point upward on the concrete floor." "A piece of paper about four inches wide and five inches long had blown up against the nail and board, so that, coming upon it from the direction from which the plaintiff came, he could not see the

nail or board, but it was apparent from the other side." A nail sticking through a board was a thing likely to be found in a building in the course of construction, and was an ordinary risk of the employment. The only reason it was not visible both to the master and the servant was the fact that a piece of paper had blown against it and covered it. It appeared affirmatively from the petition that the plaintiff had equal means with his master of knowing of the danger. The case is also easily distinguishable from that of *Terry* v. *Thompson*, 22 *Ga. App.* 406 (95 S. E. 1010).

There was no merit in the special demurrer. In a suit by a servant against a master, the petition should plainly and distinctly set forth the elements necessary to a recovery. Legal results arising from the facts alleged may be pleaded in general terms or in the form of a legal conclusion. A petition so drawn is good against demurrer. *Southern States Portland Cement Co.* v. *Helms*, 2 *Ga. App.* 308 (1) (58 S. E. 524) ; *Pacetti* v. *Central of Ga. Ry. Co.*, 6 *Ga. App.* 97 (3) (64 S. E. 302) ; *Western & Atlantic R. Co.* v. *Roberts*, 144 *Ga.* 250 (1) (86 S. E. 933). A conclusion in a pleading will be subject to special demurrer only where no facts are alleged in support of it, or the specific facts alleged will not warrant the inference which is drawn in the conclusion.

It was therefore permissible upon the facts pleaded for the plaintiff to aver by way of conclusion that he did not have equal means with the master of knowing of the danger which resulted in his injury.

We think that the petition sufficiently set forth a cause of action under the Civil Code, §§ 3130, 3131, and that the court did not err in overruling the demurrers.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*