## 21497. MOODY v. HARDEMAN *et al.*

BELL, J. 1. The rule that the master is not liable for his failure to furnish his servants a safe place in which to work "where the very work the servants are employed to do consists in making a dangerous place safe, or in constantly changing the character of the place for safety as the work progresses" (*Holland* v. *Durham Coal Co.,* 131 *Ga.* 715, 63 S. E. 290; *Byrd* v. *Thompson,* 146 *Ga.* 300, 91 S. E. 100), will not relieve the master from liability "merely because the servant was engaged in construction work, and . . at the time of the injury the object being constructed was in an unfinished state, to some extent changing from day to day. If it were otherwise, it would be difficult to find a case where a workman was engaged in performing labor for a master [where the master would be liable]. Practically all labor normally tends to change the condition of the thing labored upon; otherwise it would be useless." *Terry Shipbuilding Corp.* v. *Griffian,* 153 *Ga.* 390, 394 (112 S. E. 374). In the present case the evidence tended to show that, while the building had not been fully completed, the only thing that remained to be done was to finish the plastering, and that the plaintiff and other servants, while working as plasterers, were engaged in doing nothing that caused the place to become more dangerous or in any way changed the character of the place for safety as the work progressed, but that the building collapsed because of insecure supports for the superstructure, or from excessive weight of the roof and its appurtenances, both of which were dangers in the place of work which the plaintiff did not assume merely in virtue of his service as a plasterer. Cf. *Tufts* v. *Threlkeld,* 31 *Ga. App.* 452, 461 (121 S. E. 120).

2. While a servant is bound to observe open and obvious dangers such as would be disclosed by the exercise of ordinary care, he has the right to assume that his master has performed the duty of furnishing him with a safe place to work, and is under no obligation to inspect the same in order to discover latent defects not open to ordinary observation. A danger arising from an unsafe place is not included among the risks assumed by the servant. *King Mfg. Co.* v. *Walton,* 1 *Ga. App.* 403 (3) (58 S. E. 115); *Southern Cotton Oil Co.* v. *Horton,* 22 *Ga. App.* 155 (1 c) (95 S. E. 765).

3. "Whether the plaintiff had the same opportunity as the defendant, of knowing of the defects alleged and proved, would depend upon the character of such defects,—whether they were latent or patent. Where the defect is superficially discernible or plainly apparent to the eye, the servant has the same opportunity of seeing it and knowing of it as the master. But if the defect is latent, the master would be bound to dis-

cover the fact sooner than the servant, because the duty of inspection rests upon the master, and not on the servant. In a case of latent defects—those which are only discoverable by proper inspection,—the master is necessarily held to a higher standard of conduct than the servant, since the master owes to the servant the duty of inspection." *Cochrell v. Langley Mfg. Co.*, 5 *Ga. App.* 317 (3), 324 (63 S. E. 244); *Rountree v. Seaboard Air-Line Ry. Co.*, 31 *Ga. App.* 231, 238 (120 S. E. 654).

4. The plaintiff in his work as a plasterer was not chargeable with knowledge of the defects in the walls, posts, and beams as supports for the superstructure, unless their weakness and insecurity was so patent and obvious as to be readily discernible without an inspection. Moreover, the question of the sufficiency of these supports depended upon the weight and plan of the superstructure, as to which the plaintiff was not required to make investigation, but as to which the defendants would be responsible as for a latent defect of which they either knew or should have known, and of which the plaintiff should have been warned. *Atlantic & Birmingham R. Co. v. Reynolds*, 117 *Ga.* 47 (3), 52 (43 S. E. 456).

5. Whether or not the servants who had performed the brick and wood work, and who were no longer upon the premises, should be considered as fellow servants of the plaintiff, there was evidence tending to show negligence on the part of the defendants in the selection of the materials, and also in the plan by which the building was constructed. The negligence of a fellow servant does not relieve the master from liability to a coservant for an injury which would not have happened had the master not been negligent himself "If the master is guilty of negligence proximately causing the injury, he would not be freed from liability, although the fellow servant may likewise have been negligent." *Williams v. Garbutt Lumber Co.*, 132 *Ga.* 221, 234 (64 S. E. 65); *Loveless v. Standard Gold Mining Co.*, 116 *Ga.* 427 (42 S. E. 741, 59 L. R. A. 596); *Norris v. American Railway Express Co.*, 156 *Ga.* 150, 153 (118 S. E. 686).

6. "A person employed as a superintendent or foreman, having authority to supervise the master's business and to employ and discharge employees and direct them in their work, is the vice-principal or alter ego of the master, and his negligence in the discharge of such duties may be imputed to the master." *Buckeye Cotton Oil Co. v. Everett*, 24 *Ga. App.* 738 (102 S. E. 167); *Mack v. American Agricultural Chemical Co.*, 28 *Ga. App.* 285 (4) (111 S. E. 61).

7. In such a case, the principal and the vice-principal may be treated as joint tort-feasors, with the right in the person injured to sue both or either, according to his election. *Miller v. Straus*, 38 *Ga. App.* 781, 782 (145 S. E. 501).

8. The maxim res ipsa loquitur may in certain cases be applicable in negligence cases between master and servant; and the jury were authorized to apply the maxim in the instant case. *Parrish v. Central of Georgia Ry. Co.*, 36 *Ga. App.* 133 (3) (135 S. E. 762).

9. The evidence authorized the inference that the defendants were guilty of negligence as charged in the petition, and that the plaintiff exercised his own skill and diligence to protect himself, and also that the plain-

tiff did not know, and had not equal means of knowing, and by the exercise of ordinary care could not have known, of the defects and dangers which brought about his injury. The evidence would have authorized a verdict in favor of the plaintiff, and it was therefore error to grant a nonsuit.

10. The present case is distinguishable from such cases as *Keith* v. *Walker Iron &c. Co.*, 81 *Ga.* 49 (7 S. E. 166, 12 Am. St. R. 296), *Byrd* v. *Thompson*, 146 *Ga.* 300 (supra), and *Atlantic Paper &c. Corp.* v. *Bowen*, 23 *Ga. App.* 249 (97 S. E. 867).

  *Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED JANUARY 11, 1932.

*Poole & Fraser,* for plaintiff. *Branch & Howard,* for defendant.

BELL, J. 1. In this suit upon a note, the allegations of the defendant's answer to the effect that the plaintiff agreed to accept as a full accord and satisfaction the defendant's equity in certain lands then held by the plaintiff as security, and suggested that the defendant "make warranty deed to the plaintiff in consideration of the balance of said note, all of which was agreed to by plaintiff and defendant," did not show a completed accord and satisfaction, and a defense based upon an alleged accord can be sustained only when the accord has been completely executed. *Redman* v. *Woods*, 42 *Ga. App.* 713 (157 S. E. 252), and cit.