HERMINIA CHAPEL DE FIGUEROA ET AL., Plaintiffs and Appellees, v. MUNICIPAL ASSEMBLY OF AÑASCO, Defendant and Appellant.

No. 6568. Argued November 14, 1935.—Decided February 20, 1936.

592

*Bolívar Pagán* and *A. García Rodríguez* for appellant. *M. Figueroa del Rosario* and *Pedro Baigés* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is a certiorari proceeding instituted under section 83 of the existing Municipal Law (Session Laws 1928, p. 338), wherein the petitioners prayed the court to review and annul a certain resolution of the Municipal Assembly of Añasco.

The petitioners, Herminia Chapel de Figueroa and Mario Figueroa del Rosario alleged, in short:

That they are of legal age, married, property owners, and residents of Añasco, the first-named petitioner being a taxpayer of real property which she owns located in said municipality;

That P. M. Alvarez brought, in the District Court of Mayagüez, an action of denial of servitude and for damages against the Municipality of Añasco which action was terminated on March 10, 1930, by a judgment in favor of the municipality with costs imposed upon the plaintiff;

That Alvarez took an appeal from that judgment to the Supreme Court, which court affirmed the same on May 25, 1932. *Alvarez* v. *Municipality,* 43 P.R.R. 498;

That after the judgment had become final (*firme*) the municipality instituted the proceeding for the recovery of the costs, and on July 15, 1932, the district court adjudged Alvarez to pay $1,000 for attorney's fees and $24 for expenses incurred in purchasing internal revenue stamps for the suit; and on appeal the Supreme Court affirmed the decision of the district court on December 15, 1932;

That on February 6, 1932, the clerk of the district court served upon Alvarez the proper notice to deposit in court the said sums of $1,000 and $24 within the term of five days and that said deposit was never made;

That on the day following such notification, Alvarez submitted a request to the municipal assembly, to be exempted from paying the aforesaid sums, and plaintiff M. Figueroa del Rosario objected thereto in his capacity as a citizen, resident, and taxpayer of Añasco;

That the respondents, as members of the municipal assembly, passed an ordinance exempting Alvarez from the payment of the $1,000 for attorney's fees, gratuitously and without any consideration or legal price whatsoever in return therefor;

That the sum of $1,000, of whose payment Alvarez was relieved, constitutes a claim owned by the municipality and acquired by virtue of a final (*firme*) judgment; and such gratuitous exemption amounts to a donation of the claim which the municipal assembly has no power to effect.

The petition concluded by praying that the assembly be directed to send up the proper documents, and that its resolution be annulled.

The district court ordered that the case be proceeded with in accordance with the law. After a notice to the respondent members of the assembly, there appear in the record the following documents: Alvarez's letter; the ordinance of Feb-

ruary 9, 1933, appointing a commission of three assemblymen who were to come to San Juan in order to interview a lawyer concerning the question raised, Alvarez paying the expenses of the trip; an ordinance of February 21, 1933, designating Attorney Bolívar Pagán to study the matter and report thereon; an ordinance of March 21, 1933, relieving Alvarez from the payment of the costs; and a letter from the latter, dated March 25, 1933, accepting the ordinance.

The return to the writ was the only answer filed by the assembly. On April 28, 1933, both parties appeared before the court and "submitted the case to be decided on the pleadings and the return, . . . . and on the briefs wherein the questions of law would be argued." On October 9, 1933, the court rendered its final decision. The concluding recital (*por cuanto*) and the dispositive part of the order read as follows:

"WHEREAS, after having examined the allegations thus admitted and the return filed, all of the former appear to be confirmed by the latter, and after having carefully studied the questions of law that have been raised, the court has reached the conclusion that the Municipal Assembly of Añasco, P. R., namely, the respondents, in passing the impeached legislative act, that is in adopting the said resolution of March 21, 1933, have exceeded the power and authority vested in them by law, by waiving, condoning, bestowing, and assigning, without any compensation and to the prejudice of the taxpayers and of the public interest, the said municipal claim, owned by the municipality, which they were not and are not authorized to do.

"THEREFORE, the court sustains the petition for certiorari in this case, and holds that the resolution above transcribed, which was adopted by the Municipal Assembly of Añasco, that is, by the respondents, on March 21, 1933, is null and void on the grounds above stated, and adjudges the defendants to pay the costs of this suit, but excluding attorney's fees."

Feeling aggrieved by that decision, the assembly took an appeal to this court. It has assigned in its brief three errors claimed to have been committed by the court in sustaining the petition for certiorari, which was not prosecuted by a

prejudiced party; in holding that the assembly had assigned municipal property without any compensation; and in deciding that the assembly had acted without jurisdiction.

In its argument under the first assignment of error, the appellant cites section 83 of the Municipal Law of 1928, and the decision of this Supreme Court in the case of *Berríos* v. *Municipal Assembly of Yabucoa,* 30 P.R.R. 382, and maintains that it does not appear from the record that the petitioners are aggrieved parties.

The petition alleged directly that Herminia Chapel de Figueroa was a taxpayer on realty located in the Municipality of Añasco, and indirectly that the other petitioner, her husband, M. Figueroa del Rosario, was also a taxpayer; and since this allegation was not denied or controverted, it is sufficient in accordance with the law and the decisions cited.

In the case of *Berríos* v. *Municipal Assembly of Yabucoa, supra,* in construing section 65 of the Municipal Law of 1919, which is substantially the same as section 83 of the Act of 1928, now in force, this court said:

"Obviously the intention of the Legislature was to confer upon the courts jurisdiction to review administrative and legislative action which prior to the enactment of this law could not have been reached by certiorari. No new rules are prescribed for the exercise of this additional jurisdiction, once it is properly invoked. Nor may the court act upon the suggestion of any and every vexatious litigant who for reasons best known to himself may elect to test the validity of a municipal ordinance, but only at the instance 'of the aggrieved party.' The law does not abrogate those general rules and principles by which courts here as elsewhere are guided in the exercise of a sound discretion as to whether or not the writ shall issue.

"For the purposes of this opinion, however, it may be conceded that the language of the statute is broad enough to include, in a proper case if not in most cases, any tax-payer who has not waived or otherwise lost the right incident to such status."

The taxpayers of a municipality, who are the ones who pay the expenditures incurred by the municipal government, have a clear interest in the proper administration and pre-

servation of the property belonging to the community and in preventing that the same should be disposed of gratuitously.

Moreover, even if such interest were not expressly invoked, it appears from the allegations made that not only are the petitioners interested as taxpayers, but one of them, the husband, was the attorney for the municipality in the case where the latter was granted attorney's fees, and the recovery of which the assembly waived.

The first error assigned is nonexistent. We shall proceed to study jointly the second and third errors assigned.

■■ The municipalities of this island are political and legal entities with power to acquire, possess, administer, and hold property, as well as to alienate and encumber the same, subject to the provisions of law. Its legislative and administrative powers are ample, and are specified in detail and regulated by statute. They act through a municipal assembly and an administrative council. They are local governments of law of the utmost importance to the economic and social life of the people. They were created and should function for the benefit of the community. The citizens who compose them can not act arbitrarily but in accordance with the law. For that reason their acts may be challenged and their decisions reviewed and annulled in appropriate cases by the courts of justice.

A final (firme) judgment in favor of a municipality upholding its right to recover from a given person a certain sum of money, such as the judgment involved herein, whereby P. M. Alvarez was adjudged to pay to the Municipality of Añasco the sum of $1,000, is property (sections 252, 258, and 280 of the Civil Code, 1930 ed.; 50 C. J. 729, 759, 763, and 764) which a municipal assembly may not dispose of gratuitously, without any lawful consideration. We have examined the law and the decisions and we have not found anything therein on which a gratuitous alienation, without any lawful consideration, of municipal property by the assembly might be sustained.

It has been suggested that in accordance with the provision of section 566 of the Civil Code (1930 ed.), to wit: "All persons who can contract and dispose of their property may bestow gifts," the municipalities of Puerto Rico, which are capable of making contracts and disposing of their property, may also freely donate the same.

This provision of law is a general one. Commenting on a similar provision embodied in section 624 of the Spanish Civil Code, Manresa says: "In order to make a donation, section 624 requires: 1st, capacity to contract; 2d, capacity to dispose of his property."

He then refers to infants and other incapacitated persons, and concerning municipal governments he says:

"Churches and religious corporations may make donations; municipal councils (*Ayuntamientos*) and provincial deputations (*Diputaciones Provinciales*) may also make donations, but subject to the legal formalities that attach to all alienations. These formalities, together with the duties of the municipal councils and the provincial deputations to take care of and preserve the property and the rights entrusted to their administration, will make, however, the exercise of that right quite difficult in practice. (see the Judgment of June 23, 1885)." 5 Manresa, *Comentarios al Código Civil*, p. 93.

Section 81 of the Municipal Law of 1878 provided that alienations and exchanges of municipal property shall be made in accordance with the following rules:

"1. Lands remaining over from public roads and granted to private ownership and useless objects may be exclusively sold by the municipal council.

"2. Contracts relating to municipal establishments of no use for the service to which they had been destined, and private credits in favor of the people, require the approval of the Governor, with the intervention of the Provincial Commission.

"3. All contracts relating to other real estate and property rights of the municipality require the approval of the Governor, upon the report of the Provincial Commission."

And the Municipal Law of 1896, which was in force at the time of the change of sovereignty, contained the following provisions:

"Art. 89. Alienations and exchanges of municipal property shall be made in accordance with the following rules:

"1. Lands remaining over from public roads and granted to private ownership and useless objects may be exclusively sold by the municipal council.

"2. Contracts relating to municipal establishments of no use for the service to which they had been destined, and private credits in favor of the people, as well as all contracts relating to other real estate and property rights of the municipality, require the approval of the provincial deputation.

"3. This approval is also necessary for the acquisition of real estate and property rights by municipal councils, even though it be gratuitous, and to make leases for more than six years which require recording in the registry of property.

"Municipal councils can in no manner whatsoever make gratuitous cessions of lands of the community, nor of any other class of lands or rights belonging to the municipality, except with the approval mentioned in the two foregoing paragraphs for works or services which will be of evident benefit to the municipal interests.

"All contracts made by municipal councils for all kinds of services, purchases, works, sales, and leases, and in general all those which will cause expenses or receipts in the municipal funds, shall be made subject to the prescriptions of the royal decree of January 4, 1883, regarding administrative contracts."

It may thus be seen that the idea of a free and gratuitous transfer of property by municipalities to whomever they please or deem proper not only finds no support in the ancient municipal law, but was expressly prohibited by the Municipal Law of 1896, the approval of the Provincial Deputation being required in those instances where it was allowed.

On March 1902, the Legislature of Puerto Rico passed a new Municipal Law. In construing the same in *Patrón et al.* v. *The Municipality of San Juan,* 11 P.R.R. 375, this court laid down the following doctrine:

"The powers of municipalities as corporations are fully enumerated in sections 602 to 615, inclusive, of the Revised Statutes of Porto Rico, and it does not appear therefrom that the municipalities have any authority whatever to order the census of a city to be taken.

"Municipal corporations are created by statute and can only exercise those powers expressly conferred by legislative enactment, and they have no inherent or implied powers, such powers being reserved to the states which exercise them through their respective legislatures.

"The Tenth Amendment to the Constitution of the United States has no application whatever to the powers conferred by law upon municipal corporations."

Ever since that time the decisions of the courts of the continental United States have generally been applied in construing the Puerto Rican municipal statutes, and the municipalities have been regarded as corporations created by the Legislature for the purposes specified in the act of their creation and in other statutes enacted with reference to them. And there are numerous decisions by those courts denying the power of a municipality to dispose of its property without consideration.

Thus, in the case of *Agnew* v. *Brall*, 124 Ill. 314, 315, it was held that: "It is a plain proposition of law, and one well understood, that in the discharge of their duties a city council must act within the bounds prescribed by their charter, and if they exceed the powers conferred by the charter, such acts are nugatory. They have no power to squander or give away the funds or property of the incorporation, but all property within their control belonging to the incorporation, must be honestly applied to the uses and purposes specified in the act of incorporation. The city council have no power to sell, or in any manner dispose of, the property of the corporation without consideration, and, in our opinion, they have no right to discharge a debt without payment, which may be held against parties who are solvent and responsible, where no controversy exists in regard to the validity and binding effect of the indebtedness."

In *Tedder* v. *Walker,* 89 S.E. 841, the Supreme Court of Georgia said: "The defense urged against the payment of the note is that the Municipality of Norcross had released the debt evidenced by the note in suit. . . . The municipality by ordinance undertook to relieve the makers from liability on the note. This, in effect, was a donation of that chose in action to the defendants. The money represented by that chose in action was public property, the property of the municipality; and it was without power to donate it."

"The discretionary power of use and disposal," said the Supreme Court of South Carolina, "does not include the authority to donate [or devote] municipal property to a strictly private use, for the obvious reason that a transfer or release of such property by a municipality to a private ownership [or use] without receiving in return some consideration of reasonable equivalent value would amount to a palpable breach of the trust upon which it is held. *Haesloop* v. *City Council, supra,* 43 C. J. 1341." *Green* v. *City of Rock Hill,* 147 S. E. 346, 356.

We take the following from 43 Corpus Juris, p. 1340, sec. 2098: "Municipal corporations, it has been said, hold all property in a fiduciary capacity; and they have not the power of disposition which belongs to the private proprietor. All their powers are held in trust for public use, and the validity of their exercise generally depends upon the purpose thereof. And in this matter it must be observed the double nature of the corporation and its functions, governmental and municipal. Property held by the corporation for strictly governmental purposes may be sold or disposed of only under express legislative authority—which, however, is sometimes given—in the absence of constitutional restriction. But property acquired and held for general municipal purposes is subject to its discretionary power of use and disposal, if not needed for a municipal purpose. This does not, however, include the power of donation or gratuitous disposition."

It is true, for example, that municipalities gratuitously receive and shelter poor patients in their hospitals and abandoned children and destitute old people in their asylums, and open to the public at large their parks, schools, libraries, and museums free of charge. But in thus acting, in thus gratuitously bestowing their property, they fulfill the specified purposes for which they were created. Among such purposes can not really be included a gratuitous grant to a private person of the character alleged by the petitioners and concluded by the trial court to have been made in the instant case.

█ Whether the judgment appealed from is to be affirmed or reversed depends, therefore, upon whether the assembly disposed of the property in question gratuitously or for a lawful consideration.

Have the averments of the petitioners as to the gratuitous character of the release been contradicted by the return? Let us examine the latter in order to give a fair answer to this question.

We have already mentioned the documents contained in the return. The request of Alvarez in his letter of February 6, 1933, was as follows:

" . . . I have the honor to request that you enact an ordinance terminating the suit brought by me against the Municipality of Añasco, which was an action of denial of servitude of the aqueduct pipe lines and the establishment of a dam on land that belonged to me, upon the payment by me of all expenses incurred by this municipality in purchasing internal revenue stamps, and also that I be granted free of charge the supply of water to my home, by binding myself to pay any other expenses that may be incurred."

The suit had terminated May 25, 1932, and the costs, which included not only the expenses for internal revenue stamps, but also the sum of $1,000 for attorney's fees, were finally fixed on December 15, 1932.

In the light of those facts, said letter can only be interpreted as a request to have a debt of $1,024 settled by the payment of $24.

The assembly entertained some doubt on the matter and passed an ordinance appointing a committee of its members to go to the capital of the Island in order to consult counsel with reference to the possibility of granting said request. One of the recitals (*por cuantos*) reads thus:

"WHEREAS, this municipality has no interest in the further prosecution of said suit notwithstanding the fact that petitioner's complaint has been dismissed, on the merits, but it wishes to protect itself from any consequences that might result from the action of the Mayor in utilizing the services of an attorney without the proper authorization by this Assembly, as provided in section 27 of the Municipal Law;"

We can not understand why the assembly must protect itself because the mayor had engaged the services of an attorney without its authorization. If the act of the mayor was void, no responsibility could attach to the municipality. If it was valid, the municipality had already been granted the amount in which the services of the attorney had been assessed. Any responsibility that the municipality might have contracted in the latter case with the attorney did not cease upon Alvarez assuming it, unless the attorney consented thereto and it appears from the petition that, instead of giving such consent, he objected to the granting by the assembly of Alvarez's request.

The committee which had been appointed came to San Juan and upon its return verbally informed the assembly that Attorney Bolívar Pagán was willing to study the case, and the assembly passed another ordinance which contained the following sections:

"Section 1.—Attorney Bolívar Pagán is hereby authorized, upon considering all the documents relative to the case, to render a report to this Municipal Assembly, as to whether the latter can consider and enact an ordinance requesting the discharge of the attachment levied on the property of the plaintiff to secure the payment of the costs and expenses of said suit, and to consider the same as terminated; and also as to whether the Municipality might, by reason

of this decision become liable to Attorney Figueroa del Rosario for the fees which he claims as attorney in the case.

"Section 2.—That the fees to be charged by Attorney Bolívar Pagán, on account of said report, shall be paid by the plaintiff Pedro María Alvarez Lugo.

"Section 3.—This ordinance being of an urgent character shall take effect immediately after its approval by the Mayor."

Counsel rendered a favorable report, and the assembly passed the ordinance complained of, which is entitled: "Resolution to release Pedro María Alvarez Lugo from the payment of costs, disbursements, and attorney's fees in the case decided by the Supreme Court of Puerto Rico in December 1932, No. 5519, entitled *Pedro María Alvarez Lugo,* Plaintiff and Appellant, v. *Municipality of Añasco,* Defendant and Appellee, and for other purposes."

The recitals and dispositive part of the ordinance read as follows:

"WHEREAS, on or about December 15, 1932, the Supreme Court of Puerto Rico rendered final judgment in case No. 5519, entitled Pedro María Alvarez Lugo, Plaintiff and Appellant, v. Municipality of Añasco, Defendant and Appellee, dismissing the complaint on the merits and adjudging the plaintiff to pay to the defendant the costs, disbursements, and attorney's fees;

"WHEREAS, said case was an action of denial of servitude, brought a long time ago by Pedro María Alvarez Lugo against the Municipality of Añasco, to remove a certain pipe line of the Añasco aqueduct that had been laid on land belonging to said Alvarez Lugo located in the ward of Humatas, Añasco, in which action the Municipality of Añasco did not duly authorize any attorney to represent it in said case, as the plaintiff, Pedro María Alvarez Lugo abandoned the action brought by him and agreed not to cover (*sic*) any damages to the municipality and not to insist in the removal of the aforesaid pipes;

"WHEREAS, the Municipality of Añasco had not duly authorized any attorney to appear in said suit, and since it has not incurred in any expense in its prosecution, it would be unfair, under the circumstances above set forth, that the plaintiff should pay said costs and attorney's fees;

, "WHEREAS, Pedro María Alvarez Lugo is a citizen having exemplary civic virtues, is giving his sincere and enthusiastic cooperation to the success of the municipal government of Añasco;

"WHEREAS, the municipal government of Añasco desires to release Pedro María Alvarez Lugo from any liability by reason of the aforesaid suit:

"WHEREAS, Pedro María Alvarez Lugo accepts the provisions of the present resolution which are hereinafter set forth, in the dispositive part thereof, binding himself to assume any obligations and liabilities that might attach to the Municipality of Añasco by reason of the said suit:

"THEREFORE, Be it resolved by the Municipal Assembly of Añasco, P. R.

"Section 1.—That Pedro María Alvarez Lugo be and he is hereby released from any legal liability that might arise in connection with civil case No. 5519, entitled Pedro María Alvarez Lugo, Plaintiff and Appellant, v. Municipality of Añasco, Defendant and Appellee, decided by the Supreme Court of Puerto Rico on December 15, 1932, on appeal from the District Court of Mayagüez in suit No. 13951, between the same parties.

"Section 2.—All resolutions or ordinances in conflict herewith are hereby repealed.

"Section 3.—This resolution, being of an urgent character, shall take effect immediately after its approval, and after Pedro María Alvarez Lugo shall have communicated in writing to the Mayor of Añasco his acceptance of the entire contents of this resolution."

Lastly Alvarez accepted the resolution through a letter addressed to the assembly, reading as follows:

"I acknowledge receipt of a copy of the ordinance passed by the Municipal Assembly of this town relative to the case of Pedro María Alvarez y Lugo v. Municipality of Añasco, Puerto Rico.

"In accordance with the ordinance, I hereby agree with this Municipality to protect it at my own expense against any action and expenses that may arise subsequent to the approval of the ordinance to which I refer."

We agree with the appellant that within the certiorari proceeding herein the motives of the assembly for adopting its resolution can not be inquired into (*Piovanetti* v. *Municipal Assembly of Yauco,* 31 P.R.R. 496), and that only those aver-

ments of the petition which have not been contradicted by the return may be considered as admitted (*Rodríguez* v. *Municipal Assembly of Guánica,* 31 P.R.R. 469), but this does not mean that where particular assertions made in the ordinance or resolution of an assembly are overcome by essential facts admitted as true, the court may not disregard them in order to go into the merits and establish the truth as the same appears from the ordinance or resolution when duly analyzed, clarified and interpreted.

To what we have already said in commenting on the request of Alvarez and on one of the recitals of the first of the two ordinances passed prior to the adoption of the final resolution complained of, we will now add that the assertions made in the second recital of said resolution regarding the failure of the municipality to authorize the appointment of an attorney to represent it in the action of denial of servitude brought against the municipality, and the abandonment of the action by Alvarez, are not in accord with the actual facts as they are, that is, with the existence of the suit and with the two appeals taken by Alvarez from the judgment and from the order fixing the costs; and that this being so, the mere circumstance that Alvarez is "a citizen having exemplary civic virtues" who "is giving his sincere and enthusiastic cooperation to the success of the municipal government of Añasco," does not justify the municipal assembly in releasing him from the payment of a debt evidenced by a judgment, and for the recovery of which, besides, an attachment on the property of the debtor has already been levied; especially since the door is left open to a possible, more than possible almost certain, claim against the municipality for the same attorney's fees which the assembly sought to waive.

The appearance of legality attempted to be imparted to the resolution by such assertions, disappears under the light of the truth which struggles to rise and finally does rise from the return. And that truth is nothing else than a gratuitous relinquishment by the assembly of property belonging to the

municipality in favor of a person, which it had no power to effect. Hence, the action taken by it is null and void, and in so holding the trial court did not commit the last two errors assigned by the appellant.

The order appealed from should be affirmed.

Mr. Justice Córdova Dávila was absent at the time of the rendition of this judgment, but he authorized the statement that he concurs in the same and in the opinion on which it is based.